**In the Matter of the Extradition of Vivien THEN, Petitioner–Appellant,**

v.

**Rosa MELENDEZ, Respondent–Appellee.**

No. 95–35285.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Jan. 8, 1996.

Decided Aug. 7, 1996.

Eric Bakken and Timothy M. Greene, Seattle, Washington, for petitioner-appellant.

Susan M. Roe, Seattle, Washington, for respondent-appellee.

Before: BROWNING, WRIGHT and CANBY, Circuit Judges.

CANBY, Circuit Judge.

Vivien Then, a national of Malaysia and a resident of Singapore, appeals the district court's denial of her habeas corpus petition, brought pursuant to 28 U.S.C. § 2241. Then's petition sought review of the magistrate judge's certification of her extradition to Singapore, where she faces charges of "cheating" in connection with her alleged role in negotiating forged bills of exchange. Then contends that no constitutionally valid extradition treaty exists between Singapore and the United States. Then further argues that the extradition order was not supported by sufficient evidence. Then also raises additional arguments that we dispose of in a separate unpublished memorandum. This court has jurisdiction under 28 U.S.C.

§ 2253, and we affirm the judgment of the district court.

## I. BACKGROUND

While she was living in Singapore, Vivien Then was the representative for the president of Wisely Investment Pte., Ltd. (formerly known as Malvest Pte., Ltd.), an international investment and real estate development company. In April 1993, Singapore's Commercial Crime Division, Criminal Investigation Division, opened an investigation of Then and her employer, Mr. Yoshima, because of their suspected participation in the negotiation of $5 million in forged bills of exchange at two Singapore banks. In June 1994, the police informed Then's attorney that the matter was closed as to Then and her employer.

In August 1994, Singapore police searched Then's office in connection with a separate investigation of forged letters of credit issued by two Malaysian banks. The police also searched Then's residence, where they found a sealed envelope containing some documents and $240,000 in cash. Although the police searches at her office and residence apparently were unrelated to the previous bills of exchange investigation, during the course of this subsequent investigation the police arrested Nga Sook Khoon, who implicated Then in the bill of exchange fraud.

Then left Singapore in August 1994. She testified that she did not leave Singapore because she was concerned about being prosecuted, but because she had to attend a business meeting in Zurich. Although Then had a valid passport and visa in her possession when she entered the United States in Buffalo, New York, after entry she traveled in the United States under various false names. She applied for a United States passport in Seattle, using a false name, a false New Mexico birth certificate, and other falsified documents. When Then was stopped and questioned as she attempted to pick up her passport, she admitted her identity.

Federal charges were brought against Then for passport fraud. The United States notified Singapore of Then's arrest, and on

September 5, 1994 a Singapore magistrate issued an arrest warrant charging her with two counts of cheating. Both cheating counts related to Then's alleged role in the bill of exchange fraud while she was living in Singapore.

The U.S. Attorney filed a "Complaint for Provisional Arrest Warrant with a View Towards Extradition," and an arrest warrant issued. The Embassy of the Republic of Singapore formally requested Then's extradition to Singapore. The U.S. Attorney filed a Request for Extradition on Singapore's behalf. The magistrate judge issued an order certifying Then's extradition on December 16, 1994.

Then petitioned for a writ of habeas corpus, seeking review of the magistrate's order. The district court denied the petition, and Then now appeals the district court's judgment.[1]

## II. ANALYSIS

### A. *Then's Article II Claim*

■ Then contends that the district court lacked jurisdiction over Singapore's extradition request because the United States Senate never ratified an extradition treaty between Singapore and the United States, as is required by Article II of the United States Constitution.[2] We review de novo the question whether a constitutionally valid extradition treaty exists. *Arnbjornsdottir–Mendler v. United States*, 721 F.2d 679, 681 (9th Cir.1983).

■ The advice and consent of the Senate is a constitutional prerequisite to a valid treaty, and the executive branch does not have the power to extradite alleged criminals absent a valid extradition treaty. *See Valentine v. United States ex rel. Neidecker*, 299 U.S. 5, 8–9, 57 S.Ct. 100, 102–03, 81 L.Ed. 5 (1936). A brief examination of history reveals that an extradition treaty meeting the requirements of Article II continues in force between the United States and Singapore.

The United States and the United Kingdom signed an extradition treaty in 1931 (the "1931 Treaty"), when Singapore was a British colony. Extradition Treaty between the United States and the United Kingdom, Dec. 22, 1931, 47 Stat. 2122. The United States Senate granted its advice and consent to ratification of the Treaty in February 1932, and the Treaty entered into force between the parties in June 1935. The 1931 Treaty extended to the United Kingdom's "dominions overseas," and thus included Singapore as part of a British crown colony. When the Federation of Malaysia was formed in 1963, Singapore became a part; Malaysia assumed the rights and obligations of treaties entered between the United Kingdom and any other government on behalf of Singapore. Treaties in Force 164 (U.S. Dep't of State 1995). When Singapore became a sovereign state in 1965, the Independence of Singapore Agreement provided that previous treaties between the Government of Malaysia and another country, insofar as the treaty had application to Singapore, would be deemed to be a treaty between Singapore and that country. Between April and June of 1969, the United States and Singapore exchanged diplomatic letters confirming the continuing applicability of the 1931 Treaty between them. 20 U.S.T. 2764; T.I.A.S. No. 6744.

Since the exchange of diplomatic letters in 1969, both countries have proceeded on the assurance that a valid extradition treaty remains in force between them. There have been several extraditions between the two countries, and the United States Department of State lists an extradition treaty between the countries in its *Treaties in Force* publication. Treaties in Force 235 (1995). Then argues, however, that the 1931 Treaty obligations did not survive these various developments, notwithstanding the executive exchange of letters to the contrary. In Then's view, any extradition arrangement between now-independent Singapore and the United

---

**1.** We granted Then's motion for a stay of extradition pending our review of the case.

**2.** Article II, § 2, of the United States Constitution provides that the President "shall have Power, by

and with the Advice and Consent of the Senate, to make Treaties, provided two thirds of the Senators present concur."

States would have to be presented anew to the Senate and receive its consent.

■ We may not so easily disregard the determination of the Executive Branch that the 1931 Treaty is in force between Singapore and the United States. The continuing validity of the Treaty after Singapore's independence from the United Kingdom presents a political question, and we must defer to the intentions of the State Departments of the two countries. *Arnbjornsdottir–Mendler,* 721 F.2d at 681; *see also Terlinden v. Ames,* 184 U.S. 270, 285, 22 S.Ct. 484, 490, 46 L.Ed. 534 (1902) (when resolving the question of whether an extradition treaty between two countries has been terminated, the actions of the respective governments are controlling); *Matter of Extradition of Tuttle,* 966 F.2d 1316, 1317 (9th Cir.1992) (quoting the language of *Arnbjornsdottir–Mendler,* 721 F.2d at 681, to demonstrate that the Circuit views *Terlinden* as requiring limited review by the judicial branch); *Ivancevic v. Artukovic,* 211 F.2d 565, 573–74 (9th Cir.) (the agreed decisions of the Chiefs of State weighed heavily in determining whether an extradition treaty between the United States and Serbia remained in force), *cert. denied,* 348 U.S. 818, 75 S.Ct. 28, 99 L.Ed. 645 (1954).

Under nearly identical circumstances, we held that a constitutionally valid extradition treaty existed between the United States and the Bahamas, another former British colony originally encompassed under the 1931 Treaty. *See Tuttle,* 966 F.2d at 1316–17. As in *Tuttle,* the exchange of diplomatic letters between Singapore and the United States evinces the respective State Departments' views that the 1931 Treaty continues to apply between them, and the Senate's ratification of the 1931 Treaty suffices to make the continuing treaty relationship valid under Article II. *See id.* at 1317.

■ Then argues that divergences between the political and judicial systems of the United Kingdom and the Republic of Singapore after Singapore's independence necessitated Senate ratification of a new extradition treaty, and that the continuation of the 1931 Treaty by exchange of diplomatic letters did not fulfill this Article II requirement. She notes that the *Terlinden, Ivancevic,* and *Arnbjornsdottir–Mendler* courts examined the political and juridical changes accompanying the formation of the new countries when assessing the continuity of the extradition treaties between the United States and those countries. Nothing in the changes cited by Then, however, militates against the view of the Executive Branch that there is a legal, geographical, and historical continuity between British Singapore in 1931 and independent Singapore today. The political and juridical evolution accompanying the emergence of a new country may be a factor in the decision of the United States Department of State regarding its continuing treaty relations with the new country, and may assist the judiciary in evaluating the intentions of the political branches, but federal courts are not as well equipped as the Executive to determine when the emergence of a new country brings changes that terminate old treaty obligations. *See Ivancevic,* 211 F.2d at 573–74. The Senate's ratification of the 1931 Treaty, the emergence of independent Singapore as a successor to British Singapore, followed by the respective State Departments' actions evincing an intent to continue the Treaty between the two nations, establish the existence of a constitutionally valid extradition treaty between Singapore and the United States.

B. *Sufficiency of the Evidence Supporting the Extradition Order*

■ Then argues that Singapore did not introduce any competent evidence to support a finding that she had the requisite intent under Singapore's cheating law,[3] so that the extradition order is not supported by sufficient evidence. Our review of the sufficiency of the evidence in a habeas corpus proceeding is limited; we must uphold the magistrate's probable cause finding if there is any competent evidence in the record to support it. *Quinn v. Robinson,* 783 F.2d 776, 791 (9th Cir.), *cert. denied,* 479 U.S. 882, 107 S.Ct. 271, 93 L.Ed.2d 247 (1986).

---

3. Singapore's cheating law prohibits cheating and "dishonestly induc[ing] the person deceived to deliver any property to any person." Singapore Penal Code, ch. 224, § 420.

■ To certify Then's extradition to Singapore under the terms of the 1931 Treaty, the magistrate had to find that Singapore demonstrated probable cause to believe that Then committed the crime of "cheating" in violation of Singapore's laws. *See id.* at 815; *see also* 18 U.S.C. § 3184 (a magistrate may certify an extradition upon finding "the evidence sufficient to sustain the charge under the provisions of the proper treaty or convention"). There is competent evidence in the record to support the magistrate's finding that Singapore met its probable cause burden. An affidavit of Meor Izam Bin Meor Idris supports an inference of Then's knowing participation in the bill of exchange fraud. Inspector Lim's affidavit recounts Nga Sook Khoon's admission of his agreement with Then to share the proceeds of the fraud and Mr. Nga's explanation of Then's role in the bill of exchange fraud.

■ Because hearsay evidence is admissible to support a probable cause determination in an extradition hearing, *Quinn,* 783 F.2d at 815, and the usual rules of evidence are not applicable to this context, *see Matter of Requested Extradition of Smyth,* 61 F.3d 711, 720–21 (9th Cir.1995), *as amended by* 73 F.3d 887 (9th Cir.1995), *cert. denied,* —— U.S. ——, 116 S.Ct. 2558, 135 L.Ed.2d 1076 (1996), the affidavits are competent evidence to sustain the magistrate's probable cause finding. Even if we were to discount these declarations, other evidence, such as the documents and money found in Then's residence, would support the probable cause finding.

### III. CONCLUSION

We conclude that there is a constitutionally valid extradition treaty between the United States and Singapore because the United States Senate ratified the 1931 Treaty and the actions of both parties have evinced the intention to continue the Treaty in force between them. The district court thus had proper jurisdiction over Singapore's extradition request, and the court's order certifying Then's extradition was based on sufficient evidence of probable cause. We also find Then's other arguments to be without merit.

The district court's judgment denying the petition is

**AFFIRMED.**