**MINGTAI FIRE & MARINE INSURANCE CO., LTD., a corporation, Plaintiff–Appellant,**

v.

**UNITED PARCEL SERVICE, a business entity; United Parcel International, Inc., a business entity, Defendants–Appellees.**

**No. 98–15088.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted March 10, 1999.

Filed May 25, 1999.

Michael W. Lodwick (argued), Porter, Groff & Lodwick, Long Beach, California, for the plaintiff-appellant.

Paul T. Friedman (argued) and Ruth N. Borenstein, Morrison & Foerster, San Francisco, California, for the defendants-appellees.

Alisà B. Klein (argued), United States Department of Justice, Washington, DC, for the amicus.

Before: O'SCANNLAIN, WARDLAW and FLETCHER, Circuit Judges.

O'SCANNLAIN, Circuit Judge:

We must determine whether adherence to the Warsaw Convention by the People's Republic of China also binds Taiwan.

## I

Mingtai Fire & Marine Insurance Co., Ltd. ("Mingtai"), insured a package, shipped by Gemtronics Corp. from Taipei, Taiwan to San Jose, California, which was lost en route by United Parcel Service, the air carrier. Mingtai alleged that the lost package contained computer chips worth $83,454.80 and brought suit against United Parcel Service and United Parcel International, Inc. (collectively "UPS"), in the Northern District of California alleging, *inter alia,* loss of cargo under the Convention for the Unification of Certain Rules Relating to International Transportation by Air, Oct. 12, 1929, 49 Stat. 3000, T.S. No. 876 (1934), reprinted in note following 49 U.S.C.A. § 40105 (the "Warsaw Convention" or the "Convention").

UPS answered that the Convention did not apply, and that its air carrier liability was therefore limited to the $100 released value provided by the air waybill. Upon the parties' cross-motions for summary judgment, the district court so held, concluding that Taiwan, which is not a signatory to the Convention, was not bound by the People's Republic of China's ("China") adherence to the Convention. The district court therefore upheld the limitation on liability provided by the air waybill, and entered summary judgment in Mingtai's favor in the amount of $100.

Mingtai appeals.[1]

## II

■ The Convention only applies to shipments between territories of signatories, otherwise referred to as "High Contracting Parties." *See* Warsaw Convention, art. 1(2) (reprinted in note following 49 U.S.C.A. § 40105). The parties do not dispute that Taiwan is *not* a High Con-

tracting Party, nor that China *is* a High Contracting Party. Thus, the sole question presented is whether China's status as a High Contracting Party is sufficient to bind Taiwan to the terms of the Convention.

China signed the Convention with the declaration that the Convention "shall of course apply to the entire Chinese territory including Taiwan." 2 Christopher N. Shawcross & Kenneth M. Beaumont, *Air Law* A17 (Peter Martin et al. eds., 4th ed.1977) (1997 supplement). Mingtai's argument on appeal largely consists of the assertion that the United States' recognition of China and derecognition of Taiwan require this court to honor China's declaration that its adherence to the Convention binds Taiwan. The parties agree that the question of Taiwan's status, that is, whether derecognition rendered Taiwan bound by China's adherence to international agreements, is a question for the political branches, rather than the judiciary. The parties merely dispute what the political branches have determined Taiwan's status to be.

## A

■ The determination of whether China's adherence to the Convention binds Taiwan conflates two distinct areas of foreign relations: the effects of foreign sovereign recognition, and the status of treaties. It is axiomatic that "the conduct of foreign relations is committed by the Constitution to the political departments of the Federal Government; [and] that the propriety of the exercise of that power is not open to judicial review." *United States v. Pink,* 315 U.S. 203, 222–23, 62 S.Ct. 552, 86 L.Ed. 796 (1942); *accord Oetjen v. Central Leather Co.,* 246 U.S. 297, 302, 38 S.Ct. 309, 62 L.Ed. 726 (1918); *see also Taiwan v. United States Dist. Ct. for the N. Dist. of Cal.,* 128 F.3d 712, 718 (9th Cir.1997) (recognizing "the 'primacy of the Execu-

---

1. Mingtai also brought state law claims for negligence which the district court held were preempted by federal law. Mingtai does not appeal that portion of the district court's ruling.

tive in the conduct of foreign relations' and the Executive Branch's lead role in foreign policy") (quoting *First Nat'l City Bank v. Banco Nacional de Cuba,* 406 U.S. 759, 767, 92 S.Ct. 1808, 32 L.Ed.2d 466 (1972)). Thus, the Supreme Court has repeatedly held that the Constitution commits to the Executive Branch alone the authority to recognize, and to withdraw recognition from, foreign regimes. *See, e.g., Banco Nacional de Cuba v. Sabbatino,* 376 U.S. 398, 410, 84 S.Ct. 923, 11 L.Ed.2d 804 (1964) ("Political recognition is exclusively a function of the Executive."). "[R]ecognition of a foreign sovereign conclusively binds the courts," *Pink,* 315 U.S. at 223, because determining "[w]ho is the sovereign, *de jure* or *de facto,* of a territory is not a judicial, but a political question," *Jones v. United States,* 137 U.S. 202, 212, 11 S.Ct. 80, 34 L.Ed. 691 (1890). Thus, whether China is the sovereign, *de jure* or *de facto,* of the territory of Taiwan is a political question, and "[o]bjections to the underlying policy as well as objections to recognition are to be addressed to the political department and not to the courts." *Pink,* 315 U.S. at 229.

Similarly, "governmental action ... must be regarded as of controlling importance" in determining the status of treaties. *Baker v. Carr,* 369 U.S. 186, 212, 82 S.Ct. 691, 7 L.Ed.2d 663 (1962) (quoting *Terlinden v. Ames,* 184 U.S. 270, 285, 22 S.Ct. 484, 46 L.Ed. 534 (1902)); *see also Then v. Melendez,* 92 F.3d 851, 854 (9th Cir.1996) (recognizing that whether a treaty remains in force after a change in the sovereign status of one of the signatories is a political question). Thus, courts answer questions regarding the status of treaties following a change in the sovereign status of one of the relevant entities by deferring to the political branches' understanding of the resulting obligations. *See id.* (deferring to the determination of the Executive Branch regarding the status

of a treaty following Singapore's independence from the United Kingdom). For example, in *Clark v. Allen,* the Supreme Court considered whether a 1923 treaty with Germany remained in force following World War II, "since Germany, as a result of its defeat and the occupation by the Allies, [ ] ceased to exist as an independent national or international community." 331 U.S. 503, 514, 67 S.Ct. 1431, 91 L.Ed. 1633 (1947). Recognizing that this presented a political question, the Court simply considered whether the actions and statements of the "political departments" evinced an understanding that the treaty remained in force. *See id.* Similarly here, we look to the statements and actions of the "political departments" in order to answer whether, following recognition of China and derecognition of Taiwan, China's adherence to the Warsaw Convention binds Taiwan.

### B

As this court has noted, "[w]hen the United States established relations with [China] in 1979, it severed diplomatic relations with Taiwan." *Taiwan v. United States Dist. Ct.,* 128 F.3d at 714.[2] However, the President's Memorandum effecting this change acknowledged that, despite the termination of diplomatic relations with Taiwan, the United States still wished to maintain "commercial, cultural and other relations with the people of Taiwan without official government representation and without diplomatic relations." *President's Memorandum for All Departments and Agencies: Relations With the People on Taiwan,* reprinted in 1979 U.S.C.C.A.N. 36, 75. Thus, the President's Memorandum directed that "[e]xisting international agreements and arrangements in force between the United States and Taiwan shall continue in force...." *Id.*

---

**2.** The history of the prior relations between the United States, China, and Taiwan has been exhaustively summarized elsewhere. *See, e.g., New York Chinese TV Programs, Inc. v. U.E. Enterprises, Inc.,* 954 F.2d 847, 849–50

(2d Cir.1992); Tzu–Wen Lee, *The International Legal Status of the Republic of China on Taiwan,* 1 UCLA J. Int'l L. & Foreign Aff. 351, 353–354 (1997).

Congress, in turn, formalized this continuing relationship by enacting the Taiwan Relations Act, 22 U.S.C. §§ 3301–3316 ("Act"), "to provide a structure for 'the continuation of commercial, cultural, and other relations between the people of the United States and the people on Taiwan.'" *Taiwan v. United States Dist. Ct.*, 128 F.3d at 714 (quoting 22 U.S.C. § 3301(a)(2)). The Act provides that:

> [t]he absence of diplomatic relations or recognition shall not affect the application of the laws of the United States with respect to Taiwan, and the laws of the United States shall apply with respect to Taiwan in the manner that the laws of the United States applied with respect to Taiwan prior to [derecognition].

22 U.S.C. § 3303(a).

The Act further provides that "[w]henever the laws of the United States refer or relate to foreign countries, nations, states, governments, or similar entities, such terms shall include and such laws shall apply with respect to Taiwan," 22 U.S.C. § 3303(b)(1), and that:

> [f]or all purposes, including actions in any court in the United States, the Congress approves the continuation in force of all treaties and other international agreements, including multilateral conventions, entered into by the United States and the governing authorities on Taiwan recognized by the United States as the Republic of China prior to January 1, 1979. . . .

22 U.S.C. § 3303(c).

■ These provisions, and the Act generally, strongly imply that, despite the absence of official relations, the United States continues to deal separately with Taiwan. With the passage of the Act, the United States not only continued in force its treaties with Taiwan that antedated derecognition; it also gave no indication that existing or future agreements with the newly recognized China would be binding upon Taiwan.

The State Department's publication *Treaties in Force* makes explicit what is implicit in the Act. *Treaties in Force* contains sections listing bilateral treaties with various countries. *See* U.S. Dep't of State, *Treaties in Force* iii-iv (1997). There are separate sections listing the bilateral treaties between (1) the United States and "China" and (2) the United States and "China (Taiwan)". *See id.* These sections list numerous treaties in force between the United States and "China" that are not listed as treaties in force between the United States and "China (Taiwan)". For example, under "Atomic Energy," the "China" section lists only the "Protocol on cooperation in nuclear safety matters"; under "Atomic Energy," the "China (Taiwan)" section lists only the "Agreement for cooperation concerning civil uses of atomic energy." *See id.* at 52,315.

More specific to the question presented here, "China" is listed as a signatory to the Warsaw Convention, while "China (Taiwan)" is not. *See id.* at 329–30. This listing of "China" does not appear to encompass Taiwan, because (as noted previously) where both China and Taiwan are signatories to a treaty, *Treaties in Force* so indicates. For example, "China" is listed as a signatory to a different aviation treaty—the "Convention on offenses and certain other acts committed on board aircraft." *See id.* at 331. A note to the "China" listing for that treaty states that "[t]he Taiwan authorities have also adhered to this convention." *Id.* at 332. There would be little reason to note Taiwan's adherence if the Executive considered China's adherence to a treaty binding upon Taiwan.

We need not, however, merely rely upon the implications of the Act and the statements in and structure of *Treaties in Force*. Instead, we have the benefit of the Executive's express position on the issue presented. In an amicus brief and at oral argument, the United States made plain its position that China's adherence to the Convention does not bind Taiwan. In *Taiwan v. United States District Court*, we were similarly presented with a question

concerning Taiwan's status, regarding which the United States filed a brief as amicus curiae. *See* 128 F.3d at 718. We noted that the United States' position was "entitled to substantial deference in light of the 'primacy of the Executive in the conduct of foreign relations' and the Executive Branch's lead role in foreign policy," and thus held in accordance with that position. *Id.* (quoting *First Nat'l City Bank v. Banco Nacional de Cuba*, 406 U.S. 759, 767, 92 S.Ct. 1808, 32 L.Ed.2d 466 (1972)). Similarly here, the United States' position is entitled to deference.

■ While Mingtai argues that the district court violated separation of powers by rejecting its position, it instead would be an intrusion into the political sphere for this court to rule in Mingtai's favor and effectively to hold, contrary to every indication of executive and legislative intent, that Taiwan has tacitly been recognized by the United States as a party to any treaty signed by China. We will not do so. We caution, however, that we do not independently determine the status of Taiwan; instead, we merely recognize and defer to the political departments' position that Taiwan is not bound by China's adherence to the Warsaw Convention.[3]

### III

For the foregoing reasons, the Warsaw Convention does not apply to the lost air cargo in this case and the district court properly upheld the limitation of liability in the air waybill.

AFFIRMED.

---

**3.** Having done so, we deny UPS's Motion to Strike Plaintiff–Appellant's Request for Judi- cial Notice as moot.