**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

CHRISTINA MANTA,
             *Petitioner-Appellant,*

v.

MICHAEL CHERTOFF, Secretary of
the Department of Homeland
Security; MICHAEL B. MUKASEY,*
Attorney General,
             *Respondents-Appellees.*

No. 07-55353

D.C. No.
CV-06-01568-W

OPINION

Appeal from the United States District Court
for the Southern District of California
Thomas J. Whelan, District Judge, Presiding

Argued and Submitted
January 9, 2008—Pasadena, California

Filed March 11, 2008

Before: Jerome Farris and Milan D. Smith, Jr.,
Circuit Judges, and H. Russel Holland,** District Judge.

Opinion by Judge Milan D. Smith, Jr.

---

*Michael B. Mukasey is substituted for his predecessor, Alberto R. Gonzales, as Attorney General of the United States, pursuant to Fed. R. App. P. 43(c)(2).

**The Honorable H. Russel Holland, Senior United States District Judge for the District of Alaska, sitting by designation.

## COUNSEL

Jennifer L. Coon, Federal Defenders of San Diego, Inc., San Diego, California, for the petitioner-appellant.

George Aguilar and Kyle W. Hoffman, Assistant United States Attorneys, San Diego, California, for the respondents-appellees.

## OPINION

MILAN D. SMITH, JR., Circuit Judge:

Petitioner-Appellant Christina Manta appeals the dismissal of her petition for a writ of habeas corpus. Since 1999, Greece has sought the extradition of Crystalla Kyriakidou pursuant to the Treaty of Extradition Between the United States of America and the Hellenic Republic (the Treaty). The United States filed a Complaint for Extradition against Kyriakidou, whom the government believes is the same person as Christina Manta. After an extradition hearing, a magistrate judge granted the request for extradition based on two foreign charges of fraud. Seeking relief from the extradition order, Manta petitioned the district court for a writ of habeas corpus

under 28 U.S.C. § 2241. We affirm the district court's dismissal of Manta's habeas petition.

## I.  FACTUAL AND PROCEDURAL BACKGROUND

In October 1999, Greece requested that the United States extradite Crystalla Kyriakidou. According to the extradition request, Kyriakidou had entered the United States using a false passport under the name of Christina Manta. Greece sought to extradite Kyriakidou on the following three charges:

> (1)  deceit of especially great damage, by profession and by habit;

> (2)  deceit from which it was provoked an especially important damage, in continuation and by habit; and

> (3)  deceit in continuation against a bank, with damage that exceeds the amount of 5,000,000 drachmas [approx. $18,000 USD] and committed by a person who acted by profession and by habit and especially dangerous.

The extradition request also listed thirty check-related convictions that were imposed on Kyriakidou *in abstentia*, though some of these convictions were declared invalid some time after Greece submitted the 1999 extradition request to the United States. In December 2002, Greece again requested Kyriakidou's extradition. In this request, Greece added a fourth charge against Kyriakidou for "fraud by profession and out of habit of particularly great damage."

Based on the three charges set forth in the 1999 extradition request, the United States filed a Complaint for Extradition against Kyriakidou under 18 U.S.C. § 3184 in the United States District Court for the Southern District of California. The court issued an arrest warrant and, on June 30, 2005,

Manta was provisionally arrested on the belief that she was Kyriakidou. She was released on bond one week later. On the day of the extradition hearing, March 15, 2006, the United States filed an Amended Complaint for Extradition incorporating the fourth charge listed in Greece's 2002 extradition request.

The magistrate judge granted in part and denied in part the government's request for extradition. The magistrate judge concluded that the person before the court, Christina Manta, was Crystalla Kyriakidou, the person Greece sought for extradition. The magistrate judge granted Greece's extradition request with respect to two charges—"deceit from which it was provoked an especially important damage, in continuation and by habit," (charge two), and "fraud by profession and out of habit of particularly great damage," (charge four)— based on her finding that there was probable cause to believe that Kyriakidou had committed those crimes. The magistrate judge concluded that probable cause did not exist to extradite Kyriakidou on charges one and three.

With respect to charge two, the Amended Complaint for Extradition alleged that Kyriakidou had "misrepresented herself as a real estate investor and convinced an investor [Theodoros Kiskiras] to give her [approximately $3,200,000] for future real estate enterprises," and did not invest the money as promised. In her probable cause analysis, the magistrate judge relied on an investigation report written by a Greek Public Prosecutor, which stated that it was based on "testimonies" from Kiskiras and three other witnesses and described Kyriakidou's interactions with Kiskiras. The Magistrates' Council of Athens issued a writ of arrest for Kyriakidou based on this investigation report.

With respect to charge four, the Amended Complaint for Extradition alleged that Kyriakidou "falsely represented to an investor her identity, that she was an expert in international stock exchange trading, that she had her own investment com-

pany, and that she was receiving annual returns of 50 to 100 percent on her investments," which caused an investor, Dimitra Loui, to give her $32,000. Kyriakidou did not invest or return Loui's money. In her probable cause analysis, the magistrate judge relied on a complaint submitted by Loui to the Public Prosecutor of Athens Misdemeanors Court and an examination under oath before the Public Prosecutor of the Appeal Court of Athens in which Loui identified Manta as Kyriakidou (Loui Affidavit).

Manta challenged the order certifying her extradition by filing a petition for a writ of habeas corpus under 28 U.S.C. § 2241 in the district court. Manta now appeals the district court's dismissal of her habeas petition. We have jurisdiction under 28 U.S.C. § 2253(a).

## II. DISCUSSION

[1] "Extradition from the United States is a diplomatic process" that is initiated when a foreign nation requests extradition of an individual from the State Department. *Prasoprat v. Benov*, 421 F.3d 1009, 1012 (9th Cir. 2005) (citing *Blaxland v. Commonwealth Dir. of Pub. Prosecutions*, 323 F.3d 1198, 1207 (9th Cir. 2003)); *see* 18 U.S.C. § 3184. If the State Department concludes that the request is within the scope of a treaty between the requesting nation and the United States, a United States Attorney " 'files a complaint in federal district court seeking an arrest warrant' " for the individual sought for extradition. *Prasoprat*, 421 F.3d at 1012 (quoting *Blaxland*, 323 F.3d at 1207). A judge or magistrate judge must then hold an extradition hearing to determine if the evidence is sufficient to sustain the charge of extradition under the relevant treaty. *Id.* (citing 18 U.S.C. § 3184). If the judge or magistrate judge concludes that "the crime is extraditable," and that "there is probable cause to sustain the charge," the judge or magistrate judge must certify the extradition. *Id.* (citations omitted).

**[2]** "[A] habeas petition is the only available avenue to challenge an extradition order." *Vo v. Benov*, 447 F.3d 1235, 1240 (9th Cir. 2006) (citing *Mainero v. Gregg*, 164 F.3d 1199, 1201-02 (9th Cir. 1999)). In examining a petition for writ of habeas corpus challenging an extradition order, our inquiry on appeal is limited to whether:

> (1)   the extradition judge had jurisdiction to conduct proceedings;
>
> (2)   the extradition court had jurisdiction over the fugitive;
>
> (3)   the extradition treaty was in full force and effect;
>
> (4)   the crime fell within the terms of the treaty; and
>
> (5)   there was competent legal evidence to support a finding of extraditability.

*Zanazanian v. United States*, 729 F.2d 624, 625-26 (9th Cir. 1984) (citing *Caplan v. Vokes*, 649 F.2d 1336 (9th Cir. 1981)). The fifth factor, stated another way, requires us to consider whether competent legal evidence "demonstrate[s] probable cause to believe that the accused committed the crime charged" by the foreign nation. *Id.* at 626 (citing *Merino v. U. S. Marshal*, 326 F.2d 5, 12 (9th Cir. 1963)).

On appeal, Manta raises arguments under the fourth and fifth factors: whether the crime fell within the terms of the treaty, and whether there was competent legal evidence to support a finding of extraditability. She claims: (1) that the district court erred in concluding that the Treaty's requirement of "dual criminality" was satisfied; (2) that the district court erred in concluding that there was competent evidence to support the magistrate judge's finding that Manta is Kyriakidou, the person Greece sought for extradition; and (3) that the dis-

trict court erred in concluding that competent evidence supported the magistrate judge's probable cause determination. We address each of these arguments in turn.

## A.  Dual Criminality

**[3]** Article I of the Treaty between the United States and Greece sets forth a "dual criminality" requirement. It provides that "surrender shall take place only upon such evidence of criminality, as *according to the laws of the place where the fugitive or person so charged shall be found, would justify his apprehension and commitment for trial if the crime or offense had been there committed.*" Treaty of Extradition Between the United States of America and the Hellenic Republic, U.S.-Greece, May 6, 1931, 47 Stat. 2185 (emphasis added). In other words, an offense is not extraditable under the Treaty unless it is considered criminal under the laws of both Greece and the United States. *See Caplan*, 649 F.2d at 1343.

**[4]** Dual criminality exists if the "essential character" of the acts criminalized by the laws of each country are the same and the laws are "substantially analogous." *Oen Yin-Choy v. Robinson*, 858 F.2d 1400, 1404 (9th Cir. 1988) (internal quotations and citations omitted). The name by which the crime is described in each country and the scope of liability need not be the same. *Id.* (citing *Emami v. U. S. Dist. Court*, 834 F.2d 1444, 1450 (9th Cir. 1987)). The elements of the crime allegedly committed in a foreign country also need not be identical to the elements of the substantially analogous crime. *Id.* at 1404-05 (citing *In re Russell*, 789 F.2d 801, 803 (9th Cir. 1986)) (stating that Hong Kong crimes of false accounting and publishing a false statement are substantially analogous to federal crime of making a false entry in a bank statement); *Clarey v. Gregg*, 138 F.3d 764, 765 (9th Cir. 1998) ("[D]ifferences between statutes aimed at the same category of conduct do not defeat dual criminality."). Rather, " '[i]t is enough that the conduct involved is criminal in both countries.' " *Oen Yin-Choy*, 858 F.2d at 1404-05 (quoting *In re Russell*, 789 F.2d

at 803); *see Emami*, 834 F.2d at 1450 (stating that dual criminality is satisfied if the "substantive conduct each statute punishes is functionally identical").

We review de novo a district court's decision as to whether a crime falls within the terms of a treaty, including a treaty's requirement of dual criminality. *Clarey*, 138 F.3d at 765; *United States v. Khan*, 993 F.2d 1368, 1372 (9th Cir. 1993).

**[5]** We agree with the district court that the essential character of the two crimes on which the magistrate judge based the extradition order—"deceit from which it was provoked an especially important damage, in continuation and by habit," and "fraud by profession and out of habit of particularly great damage"—target fraud by false pretenses or obtaining money by false pretenses,[1] which is criminal in the United States under laws punishing mail and wire fraud.[2] Manta[3] presents a

---

[1]Article 386 of the Greek Criminal Code, paragraphs 1 and 3, criminalizes the conduct with which Greece charged Kyriakidou in charges two and four. The Greek Criminal Code provides, in relevant part:

> 1. Anyone who, with the purpose to gain illegal profit for himself or another person, hurts another persons's property by convincing someone to act, omit or tolerate, by knowingly presenting false events as real or the unjust coverage or concealment of real facts, is punished by imprisonment of at least three months and if the damage caused is of [particularly] high value, by imprisonment of at least two years.

> 3. It is imposed imprisonment of up to ten years: a) if the offender commits frauds by profession or by habit.

[2]Federal law prohibiting mail and wire fraud permits the prosecution of anyone who "having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises" uses the mail or wire transmissions to further the scheme or artifice. 18 U.S.C. §§ 1341, 1343. Though the parties do not discuss Manta's use of the wires or mails in perpetrating the alleged fraud, Manta does not argue that her conduct would not have been criminal in the United States on this basis. Manta has therefore waived any such argument on appeal. *Smith v. Marsh*, 194 F.3d 1045,

narrow challenge to the district court's conclusion that the Treaty's dual criminality requirement was met.[4] Though Manta admits that the "foreign offenses charged are similar to criminal fraud," she argues that the government did not prove dual criminality because it "failed to establish a specific intent to defraud." This argument is not persuasive.

**[6]** We agree with Manta that it is proper to consider her alleged intent as a part of our dual criminality analysis. Dual criminality requires that the " 'conduct involved is *criminal* in both countries.' " *Oen Yin-Choy*, 858 F.2d at 1405 (quoting *In re Russell*, 789 F.2d at 803) (emphasis added); *see Emami*, 834 F.2d at 1449-50 (concluding that as long as Emami's alleged conduct would be prosecutable under the laws of the United States, dual criminality was satisfied even though the two relevant countries had differing definitions of fraud). Because conduct is only criminal if performed with the required intent, we must consider whether Manta's alleged conduct evidences a specific intent to defraud such that her alleged conduct would be criminal in the United States.

An intent to defraud may be inferred from circumstantial evidence. *United States v. Milwitt*, 475 F.3d 1150, 1159 (9th Cir. 2007) (citing *United States v. Cloud*, 872 F.2d 846, 852

---

1052 (9th Cir. 1999) ("[O]n appeal, arguments not raised by a party in its opening brief are deemed waived.").

[3]We assume, for the purpose of this Section, that Manta and Kyriakidou are the same person. The merits of this assumption are discussed in Section II.B, *infra*.

[4]We need not address Manta's only other argument related to dual criminality, that the district court erred as a matter of law by focusing on the *laws* of each jurisdiction, as our review of the district court's dual criminality analysis is de novo. *See Clarey*, 138 F.3d at 765. Moreover, the district court correctly noted that a dual criminality analysis considers whether "the 'essential character' of the" targeted conduct is punishable under the laws of the two relevant countries, which is consistent with our case law. *See Oen Yin-Choy*, 858 F.2d at 1404.

n.6 (9th Cir. 1989)); *Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1400 (9th Cir. 1986) (specific intent to defraud required by mail and wire fraud statutes is "satisfied by the existence of a scheme which was reasonably calculated to deceive persons of ordinary prudence and comprehension") (internal quotations and citations omitted); *cf. Oen Yin-Choy*, 858 F.2d at 1407-08 (inferring the intent "to gain for himself or for another" from "the structure and result of the transactions"). We can easily infer Manta's intent to defraud from the alleged conduct on which Greece based charges two and four.

**[7]** As to charge two, the 1999 extradition request alleged that Manta "falsely presented" to Kiskiras that she was in the real estate business, that she bought estates at auctions and resold them for profit in cooperation with certain Belgian and Swiss companies, and that she was "of a great financial welfare"; as a result, Manta convinced Kiskiras to give her millions of dollars which she kept and never invested. Manta's intent to defraud is supported by the Public Prosecutor's investigation report, which documented that when Kiskiras asked Manta to return some of his investment, she gave him checks that lacked sufficient funds. Kiskiras also learned that, contrary to Manta's representations, she had no involvement with the banks or real estate companies.

**[8]** We can also infer an intent to defraud from the conduct on which charge four is based. Manta is alleged to have presented to Dimitra Loui "knowingly of the truthlessness" that she had an investment company named IMAR World Trading Ltd., which invested in secured bonds of developing countries with an annual return of 50-100 percent. Loui gave Manta approximately $32,000 to invest (as valued in the 2006 Amended Complaint for Extradition), and this money was never returned to Loui or invested.

## B. Identity

**[9]** At an extradition hearing, the court is required to determine whether the party before the court is the party named in

the extradition complaint. *Hooker v. Klein*, 573 F.2d 1360, 1367 (9th Cir. 1978). Whether the person before the court is the accused is part of the magistrate judge's probable cause analysis. *Quinn v. Robinson*, 783 F.2d 776, 815 (9th Cir. 1986). On habeas, we uphold a magistrate judge's finding that there is probable cause to believe the accused committed the crime charged if there is any competent evidence in the record to support it. *Then v. Melendez*, 92 F.3d 851, 854 (9th Cir. 1996) (citing *Quinn*, 783 F.2d at 791); *Zanazanian*, 729 F.2d at 626 (citing *Merino*, 326 F.2d at 12).

**[10]** We agree with the district court that there was ample competent evidence to support the magistrate judge's conclusion that Crystalla Kyriakidou, the person Greece requested for extradition, is the same person as Christina Manta, the person before the magistrate judge. The magistrate judge relied on a complaint that Loui submitted to the Public Prosecutor of Athens Misdemeanor Court, in which Loui alleged that the person who committed fraud against her in Greece presented herself as Christina Manta using passport No. I.837326 (issued in 1994), that Manta left Greece to live in San Diego, and that Loui later learned that Manta's real name was "Cristallo Kiriakidou." In Loui's affidavit, she stated that she examined passport No. N464835, which was issued to "Christina Manta" in 1999, and testified that she recognized the person in the picture as the person who deceived her.

The magistrate judge observed that the person in court appeared to be the same person that Loui had identified in the passport photo. The magistrate judge also noted other evidence, though not conclusive by itself, supporting that the person before the court was Kyriakidou. She considered that the Public Prosecutor in Greece recognized the person in the passport photo as having a good likeness to the person Greece sought for extradition, that Manta had provided different dates of birth for herself on three occasions suggesting that her true identity was not that of Christina Manta, and that Manta

admitted that she was in Greece in 1997, when some of the alleged conduct took place.

Manta argues on appeal that there is no evidence that she is the person sought in connection with charge two, and that Loui's identification is not competent to support that she is the person sought in connection with charge four. As a preliminary matter, Manta errs in suggesting that the government needed to provide specific evidence that she was the person sought as to each charge. Manta cites no case law to support such an approach and, by seeking extradition of one individual for multiple charges at once, it is implicit that Greece seeks to extradite the same person on all charges. Thus, our analysis of whether the magistrate judge had competent proof of identity is not charge-specific.

Manta also contends on appeal, for the first time, that Loui's identification is not competent because (1) the government's submission of Loui's affidavit identifying was untimely under the Treaty, and (2) Loui's identification was impermissibly suggestive. As a general rule, we do not consider issues raised for the first time on appeal. *See Allen v. Ornoski*, 435 F.3d 946, 960 (9th Cir. 2006) (citing *United States v. Flores-Montano*, 424 F.3d 1044, 1047 (9th Cir. 2005)). The Ninth Circuit has recognized three narrow exceptions to this general rule. *See Flores-Montano*, 424 F.3d at 1047 (internal quotations and citation omitted) (stating that a court may exercise its discretion to review newly presented issues when there are exceptional circumstances, due to a change in law while appeal was pending, or when the issue is a pure issue of law and the opposing party will suffer no prejudice). These exceptions do not apply here due to the nature of the new arguments Manta has asserted. However, a further exception applies "when plain error has occurred and an injustice might otherwise result." *Id.*

Plain error occurs only when there is an error, that is plain, and affects a defendant's substantial rights; an appellate court

may exercise its discretion to correct such an error only if it " 'seriously affect[s] the fairness, integrity, or public reputation of judicial proceedings.' " *United States v. Thornton*, 511 F.3d 1221, 1225 n.2 (9th Cir. 2008) (quoting *Johnson v. United States*, 520 U.S. 461, 467 (1997)). For the following reasons, we conclude that the magistrate judge's consideration of the government's evidence supporting Loui's identification did not constitute plain error.

**[11]** We turn first to Manta's argument that the government's submission of Loui's identification was untimely. Article XI of the Treaty provides, in relevant part, that if the fugitive is charged with a crime and provisionally arrested in the United States, she shall be released "unless within two months . . . a duly authenticated copy of the warrant of arrest in the country where the crime was committed, and of the depositions upon which such warrant may have been issued, shall be produced, with such other evidence or proof as may be deemed competent . . . ." 47 Stat. 2185. It is true that Loui's complaint and her statement under oath were not submitted in authenticated form until after this two-month deadline. At the time the government submitted the initial Complaint for Extradition, however, the government attached authenticated documents including Greece's request for extradition and a warrant in Greece for Kyriakidou. The plain language of the Treaty does not require that the government submit *all* of its evidence to support an extradition request within two months of the alleged fugitive's provisional arrest. In effect, such a requirement would prevent the government from gathering evidence to support extradition any time after this two-month period, which could severely limit the government's ability to extradite individuals under the Treaty. We decline to read such a requirement into the Treaty, particularly in light of the rule that we are to construe extradition treaties liberally. *United States ex rel. Sakaguchi v. Kaulukukui*, 520 F.2d 726, 731 (9th Cir. 1975).

Second, the magistrate judge's consideration of Loui's photo identification also was not erroneous on the grounds

that it was "impermissibly suggestive." Manta argues that Loui's identification is not reliable because it occurred eight years after Loui had allegedly seen Kyriakidou, Loui was shown only a single photograph, and the photograph was displayed as part of a passport with Manta's name and other identifying information. Our case law regarding what identification evidence is proper in extradition hearings does not support Manta's objections.

[12] "[T]he credibility of the reported identification is a matter committed to the magistrate and is not reviewable on habeas corpus." *Escobedo v. United States*, 623 F.2d 1098, 1102 n.10 (5th Cir. 1980); *see also Quinn*, 783 F.2d at 815 ("The magistrate was free to determine the weight to be accorded to the various descriptions of the killer."). Moreover, "there is no *per se* rule that specifies which identification procedures are 'competent' for probable cause purposes." *Quinn*, 783 F.2d at 815. An identification based on a single photograph may be competent evidence of identity in an extradition proceeding. *See Escobedo*, 623 F.2d at 1102. In *Escobedo*, the Fifth Circuit favorably considered a hearsay report that a witness to a crime was shown a picture of the alleged fugitive and "recognized him as one of the persons who performed the attack" in its probable cause analysis. *Id.* at 1102. Finally, a magistrate judge may consider the circumstances of an identification when assessing its reliability. *Quinn*, 783 F.2d at 815. The magistrate judge properly did so here when she credited Loui's identification, in part, because Loui had multiple interactions with Kyriakidou.[5] *See Neil v.*

---

[5]Manta cites to several district court cases to support her argument that Loui's identification was unreliable because it was "impermissibly suggestive." Although none of these cases bind this court, they are all distinguishable. *See In re Extradition of Chavez*, 408 F. Supp. 2d 908, 913-14 (N.D. Cal. 2005) (photo identification based on showing of single photograph seven years after crime insufficient when individuals making identification did not witness the crime); *In re Extradition of Cervantes Valles*, 268 F. Supp. 2d 758, 774 (S.D. Tex. 2003) (identification impermissibly

*Biggers*, 409 U.S. 188, 199-200 (1972) (reliability of identification determined on totality of circumstances, including, among other factors, whether witness viewed criminal at time of crime).

**[13]** Thus, we conclude that no plain error occurred with respect to the identification of Manta. We therefore decline to give further consideration to either of Manta's newly raised arguments on the subject of her identification.

## C. Probable Cause as to Charges Two and Four

We will uphold a magistrate judge's determination that there is probable cause to believe the accused committed the crime charged if there is any competent evidence in the record to support it. *Then*, 92 F.3d at 854 (citing *Quinn*, 783 F.2d at 791); *Zanazanian*, 729 F.2d at 626 (citing *Merino*, 326 F.2d at 11). Manta contends that the magistrate judge's conclusion that there was probable cause to believe that Manta committed the crimes in charges two and four was not supported by competent evidence because depositions supporting the Greek arrest warrant were never produced, and the magistrate judge considered unsworn witness statements. Manta also argues that the use of unsworn testimony to support extradition violates the Fourth Amendment. We agree with the district court that the magistrate judge's probable cause determination was supported by competent evidence, and we also conclude that Manta's Fourth Amendment rights were not violated.

---

suggestive when seven-photograph lineup contained two photographs of suspect); *In re Extradition of Gonzalez*, 52 F. Supp. 2d 725, 737 (W.D. La. 1999) (identifications based on photos unreliable when no evidence established the circumstances surrounding the identifications, the "witnesses were told that the men in the photographs were found in possession of stolen travelers checks, suggesting their guilt," and the relevant treaty required the Government to "furnish 'facts and personal information of the person sought which will permit his identification . . . .' ").

**[14]** Section 3190, which controls the admissibility of evidence in extradition proceedings, is clear that "[d]epositions, warrants, or other papers or copies thereof . . . shall be received and admitted as evidence [at an extradition] hearing for all the purposes . . . if they shall be properly and legally authenticated . . . ." 18 U.S.C. § 3190. The usual rules of evidence do not apply in extradition hearings and, unless the relevant treaty provides otherwise, the only requirement for evidence is that it has been authenticated. *Oen Yin-Choy*, 858 F.2d at 1406; *Then*, 92 F.3d at 855. According to Manta, Article XI of the Treaty required more than authentication. Article XI provides, in relevant part, that:

> If [a] fugitive is merely charged with a crime, a duly authenticated copy of the warrant of arrest in the country where the crime was committed, and of the depositions upon which such warrant may have been issued, shall be produced, with such other evidence or proof as may be deemed competent in the case.

47 Stat. 2185. Manta argues that Article XI *required* the government to submit "depositions" supporting the Greek arrest warrant, and also contends that unsworn witness statements submitted by the government are not competent evidence under the Treaty because they are not under oath and, therefore, do not qualify as "depositions."

**[15]** The plain language of the Treaty defeats Manta's latter argument, that witness statements are not competent because they are unsworn. Article XI is clear that depositions "shall be produced, *with such other evidence or proof as may be deemed competent in the case*." 47 Stat. 2185 (emphasis added). As stated above, the only requirement of evidence in extradition hearings is that it has been authenticated. *Oen Yin-Choy*, 858 F.2d at 1406; *Then*, 92 F.3d at 855. Nothing in Article XI or elsewhere in the Treaty suggests that anything more is required for "other evidence or proof" to be consid-

ered competent, and Manta does not suggest that the magistrate judge considered any unauthenticated documents.

Manta's other argument, that the magistrate judge's probable cause determination was not supported by competent evidence because no depositions supporting the Greek arrest warrant were produced, also fails. In reaching this conclusion, our reasoning differs slightly from that of the district court. *See Papa v. United States*, 281 F.3d 1004, 1009 (9th Cir. 2002) (appellate court may affirm "on any proper ground supported by the record").[6]

**[16]** The plain language of the Treaty is clear that depositions are not required in every case. The Treaty requires the submission of depositions only when a warrant "may have been issued" upon those depositions. *See* 47 Stat. 2185 . The record does not confirm that any statements in support of the Greek arrest warrant exist and were not produced. The government submitted the investigation report by the Public Prosecutor, which served as the basis for the Greek arrest warrant. While it is true that the Public Prosecutor's statement referenced "testimonies" by Kiskiras and three other witnesses, nothing in the record suggests that any of these witnesses' statements were documented and we have no reason to

---

[6]Citing to *Zanazanian*, the district court concluded that the magistrate judge had relied on documents that could qualify as "depositions" within the meaning of the Treaty; in *Zanazanian*, the relevant treaty provision permitted a request for extradition to be supported by "the depositions, record of investigation, *or other evidence* upon which such warrant or order for arrest may have been issued and such other evidence or proof as may be deemed competent in the case." 729 F.2d at 627 (emphasis added) (citation and quotation marks omitted). We concluded that the extradition treaty between the United States and Sweden, which referenced "depositions," did not require sworn statements. *Id.* at 626-27. Though our opinion was not explicit as to whether the term "deposition" did not require statements under oath or whether the hearsay reports fell within the category of "other evidence," we need not settle this question today because, as we will discuss, there is no evidence that the government withheld any documents supporting the Greek arrest warrant, sworn or unsworn.

believe that the Greek arrest warrant was based on anything more than the summary version of the "testimonies" in the form of the Public Prosecutor's statement. Moreover, the fact that the Public Prosecutor's investigation report summarized witnesses statements is not significant. *See Then*, 92 F.3d at 855 (hearsay evidence admissible to support a probable cause for extradition); *Zanazanian*, 729 F.2d at 626-27 (citations and internal quotations omitted) (noting that to eliminate hearsay from extradition proceedings would defeat one of the primary purposes of extradition treaties, which is to "obviate the necessity of confronting the accused with the witnesses against him").

**[17]** Manta's final argument is that the use of unsworn testimony to support extradition violates the Fourth Amendment. Under 18 U.S.C. § 3184, a magistrate judge is authorized to issue both a provisional warrant, to bring the accused before the court to hear evidence against him, and a final warrant, to commit the accused to prison until the foreign government requests surrender of the accused. Manta is correct that the Fourth Amendment's protections extend to those arrested pursuant to treaties. *See Reid v. Covert*, 354 U.S. 1, 15 (1957) ("[N]o agreement with a foreign nation can confer power on the Congress, or any other branch of Government, which is free from the restraints of the Constitution."); *see also* U.S. Const. amend. IV ("[N]o Warrants shall issue, but upon probable cause, supported by Oath or affirmation . . ."). But Manta's attempt to expand the Fourth Amendment's oath requirement to all evidence offered in an extradition proceeding is unfounded.

**[18]** Manta cites no cases to support that the Fourth Amendment requires that every piece of evidence relied on in an extradition proceeding be sworn. Moreover, such a requirement would run contrary to our well-established case law that evidence offered for extradition purposes need not be made under oath. *Zanazanian*, 729 F.2d at 627 ("Neither the applicable treaty nor United States law requires evidence offered

for extradition purposes be made under oath."). We therefore hold that Manta has not established that the Fourth Amendment entitles her to relief.

## CONCLUSION

For the foregoing reasons, we AFFIRM the district court's dismissal of Manta's habeas petition.