**Dimitrios SKAFTOUROS, Petitioner,**

v.

**UNITED STATES of America, Respondent.**

No. 09 Civ. 7145(DAB).

United States District Court, S.D. New York.

Dec. 20, 2010.

Opinion Denying Reconsideration Jan. 13, 2011.

Richard Bruce Lind, Richard Lind Attorney at Law, New York, NY, for Plaintiff.

Harris Fischman, United States Attorney Office, New York, NY, for Defendant.

## MEMORANDUM & ORDER

DEBORAH A. BATTS, District Judge.

On August 13, 2009, Petitioner Dimitrios Skaftouros filed the instant Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241, and on September 30, 2010, Petitioner moved to dismiss the extradition proceedings against him. For the reasons stated herein, Skaftouros's Petition for Writ of Habeas Corpus and Motion to Dismiss the Extradition Proceedings are GRANTED.

## I. BACKGROUND

On July 31, 2009, Magistrate Judge Theodore H. Katz granted the Government's request for a certificate of extraditability for Dimitrios Skaftouros. *In re Extradition of Skaftouros,* 643 F.Supp.2d 535 (S.D.N.Y.2009). The government of Greece seeks Skaftouros's extradition pursuant to the Extradition Treaty Between the United States of America and Greece, United States–Greece, May 6, 1931, 47 Stat. 2185 (the "Treaty"), to face the charge of being an accessory to homicide. The allegations against Skaftouros are recounted in detail in Magistrate Judge Katz' thorough opinion, and will be restated here only briefly.

In early 1990, Constantinos Spinaris, Dimitrios Agapitos, and Vasilios Vasiliou plotted to kidnap Ioannis Tsatsanis (known as "Marselino" or "the victim") for ransom. *Skaftouros,* 643 F.Supp.2d at 538. Spinaris, Agapitos, and Vasiliou enlisted Skaftouros's help with the plan, and Skaftouros in turn recruited two others. *Id.* After luring the victim to the outskirts of Athens, Skaftouros and the other assailants handcuffed Marselino, pulled a hood over his head, and drove him away in a car owned by Skaftouros's cousin's husband, who was an employee of Skaftouros's father. *Id.* at 539. The victim was taken to the home of an acquaintance and Skaftouros departed. *Id.* The assailants held Marselino for several days, during which Skaftouros brought them food. *Id.*

On March 21, 1990, the assailants, including Skaftouros, placed the victim in a van and drove him through an uninhabited area of the countryside to some land that belonged to a relative of Skaftouros. *Id.* at 540. While Skaftouros remained in the

van, three of the assailants took the victim to a freshly-dug pit. *Id.* One of the assailants shot Marselino in the chest and neck with a revolver allegedly belonging to Skaftouros. *Id.* Skaftouros was informed that Marselino had been killed, and the assailants returned to Athens. *Id.* Marselino's body was discovered in June 1990. *Id.* at 541.

Skaftouros fled Greece for Italy in May 1990, and a warrant was issued for his arrest on June 22, 1990. *Id.* In 1992, Skaftouros entered the United States illegally from Canada, and has remained here since. *Id.* On May 29, 2008, he was detained in New York City by federal law enforcement agents. On June 11, 2008, the Government presented Skaftouros on a Complaint seeking extradition to Greece on charges of being an accessory to homicide and kidnapping a minor for ransom. *Id.*

## II. DISCUSSION

■ Skaftouros now files this Petition for Writ of Habeas Corpus claiming that by virtue of the extradition proceedings, he is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3).[1] Habeas corpus review of extradition proceedings is "narrow" in scope. *Murphy v. United States,* 199 F.3d 599, 601 (2d Cir.1999). A reviewing court may consider only three issues: "(1) whether the judge below had jurisdiction; (2) whether the offense charged is extraditable under the relevant treaty; and (3) whether the evidence presented by the Government established probable cause to extradite." *Cheung v. United States,* 213 F.3d 82, 88 (2d Cir.

2000); *see also Jhirad v. Ferrandina,* 536 F.2d 478, 482 (2d Cir.1976). "Habeas corpus is not a writ of error, and it is not a means of rehearing what the [extradition] judge or magistrate already has decided." *Ahmad v. Wigen,* 910 F.2d 1063, 1066 (2d Cir.1990).

Skaftouros makes three arguments: (1) probable cause to extradite was not established because the Government relied on unsworn testimony and the court did not credit statements that tended to exonerate Skaftouros; (2) the Greek arrest warrant was fatally defective; and (3) the statute of limitations has run on the homicide charge, so it is no longer an extraditable offense.

### A. Probable Cause

Skaftouros argues in his Petition that the extradition request was not supported by sufficient reliable proof. (Pet., 2.) This argument is without merit.

■ Article XI of the Treaty requires the submission of "depositions upon which such [arrest] warrant may have been issued." Skaftouros claims that witness statements submitted in support of an application for extradition must therefore be sworn. (Resp. Mem. L. Pet., 8.) This Court disagrees. Like the Ninth Circuit, this Court concludes that "deposition" is ambiguous and does not necessarily require sworn statements. *Manta v. Chertoff,* 518 F.3d 1134, 1147 (9th Cir.2008) ("[E]vidence offered for extradition purposes need not be made under oath."); *see also Manta v. Chertoff,* No. 06 Civ. 1568, 2007 WL 951298, at *4 (S.D.Cal. Mar. 12, 2007) ("Likewise, the court here concludes that the United States–Greece extradition treaty uses the word "depositions" in its

---

1. Skaftouros could not appeal Magistrate Judge Katz's decision because "[a]n order granting or denying [extradition] is not appealable. An extraditee's sole remedy from an adverse decision is to seek a writ of habeas corpus; the Government's sole remedy is to file a new complaint." *Ahmad v. Wigen,* 910 F.2d 1063, 1065 (2d Cir.1990) (internal citations omitted).

general sense. If Congress intended to require sworn testimony, it could have said so unambiguously.") (internal citations omitted).

██ The evidence presented in support of Skaftouros's extradition included a 71–page report of the Council of Magistrates in Athens, Skaftouros's own statements to federal agents, and a sworn statement by one of Skaftouros's accomplices, Stamatios Grypos. Taken together, this Court agrees with Magistrate Judge Katz that the evidence establishes probable cause to believe Skaftouros (1) knew of the plot to abduct Marselino for ransom; (2) visited the house where Marselino was imprisoned on more than one occasion; (3) helped procure a car for transporting Marselino; (4) accompanied the assailants as Marselino was removed from Athens to the countryside; and (5) returned to Athens with the assailants and without Marselino. *Skaftouros,* 643 F.Supp.2d at 551.

Furthermore, the statement of Stamatios Grypos is not, as Skaftouros claims, exculpatory. Grypos's statement demonstrates that Skaftouros knew of the kidnapping, lent a car to transport the victim, and procured a relative's sheep pen in the country where Marselino was taken. (Lind Aff. Ex. G.) The arrest warrant in this case was supported by probable cause.

### B. Validity of the Greek Arrest Warrant

██ Skaftouros argues that his Petition for Writ of Habeas Corpus must be granted because the Greek arrest warrant supporting the application for extradition is fatally defective, such that he is not "charged" with an extraditable offense within the meaning of the Treaty. (Resp. Mem. L. Pet., 4–7.) Specifically, Article 276.3 of the Greek Criminal Procedure Code (the "CPC") requires that an arrest warrant bear "the official stamp and the signature of the investigator and the clerk." (Lind Aff. Ex. D.) The warrant issued for Skaftouros was not signed by the clerk. (Resp. Mem. L. Pet., 4–5; Lind Aff. Ex. C.) Skaftouros also alleges that the warrant does not contain "the most precise possible description of the face of the person under arrest," as required by Article 276.3 of the CPC, and that Greek authorities never attempted to serve the warrant, as required by Articles 115 and 116 of the CPC. (*Id.,* 5.) The Government does not dispute that the Greek warrant contains these defects.

Like the Treaty at issue here, the treaty in *Sacirbey v. Guccione,* 589 F.3d 52 (2d Cir.2009), required production of "a duly authenticated copy of the warrant of arrest in the country where the crime has been committed." *Sacirbey,* 589 F.3d at 66. The Second Circuit concluded in *Sacirbey* that the warrant requirement in the treaty obligated the Government to *prove* the existence of a "valid arrest warrant," and that "[a]ny other reading would ignore the express terms of [the treaty]." *Id.* at 67.

Instead of arguing that the defects in the Greek arrest warrant do not render it invalid, the Government attempts to distinguish *Sacirbey* on the unique facts of that case, in which the foreign court system that issued the original arrest warrant later lost jurisdiction, rendering the warrant a nullity. (*See* Gov. Ltr. Dec. 30, 2009.) The Second Circuit, however, explicitly rejected that limitation. When the petitioner in *Sacirbey* argued that the treaty merely required a showing that a foreign court had judicial authority over the proceedings, the Second Circuit replied that such a question pertained to the "wisdom" of extradition, which is within the province of the executive branch, and is not a "question over which this Court has jurisdiction." *Id.* at 66. Rather, the Second Circuit found, this Court is bound to look to

the terms of the Treaty, which require proof of a "valid" arrest warrant. *Id.* at 66–67.

Nor can this Court rely on the evident intent of the Greek authorities to prosecute Skaftouros once he is extradited. Although the Second Circuit in *Sacirbey* analyzed letters from Bosnian authorities and found that the intent to prosecute was not clear, the Second Circuit dismissed the notion that an intent to prosecute could cure a defective arrest warrant, stating that

> We ... offer our interpretation of the letters only in response to the argument that an 'intent to prosecute' is present. As a matter of law, we hold only that the Treaty requires a valid arrest warrant; there is no valid warrant in the present case; and the terms of the Treaty were, accordingly, not met. Whether an intent to prosecute can be proven by the letters is therefore irrelevant to our holding.

*Id.* at 68 n. 21.

Lacking any argument or expert opinion from the Government that the Greek arrest warrant is valid as issued, this Court must find that Skaftouros is not "charged" with an offense within the meaning of the Treaty. Accordingly, his Petition for Writ of Habeas Corpus must be GRANTED.

## C. Statute of Limitations

Finally, Skaftouros moves to dismiss the extradition proceedings based on Article V of the Treaty, which provides:

> A fugitive criminal shall not be surrendered under the provisions hereof when, from lapse of time or other lawful cause, according to the laws of either of the surrendering country or the demanding country, the criminal is exempt from prosecution or punishment for the offense for which the surrender is asked.

Because the Greek statute of limitations for homicide is twenty years, Skaftouros claims, he is exempt from prosecution in the demanding country and may not be surrendered under the Treaty.

In the proceedings before Magistrate Judge Katz, Skaftouros did not advance a claim that the statute of limitations barred his extradition because, as he concedes, the statute of limitations had not yet run when Magistrate Judge Katz granted the Government's motion for a certificate of extraditability. (*See* Mem. L. in Supp. Mot. to Dismiss, 3 n. 2.) The Government argues, without citation to legal authority, that the only relevant inquiry on habeas review is whether the statute of limitations had run on the date of Magistrate Judge Katz' Order. (Gov. Resp. Def.s' Mot. Dismiss, 4.) Given that the statute of limitations may be considered on habeas review of extradition proceedings, *see generally, Jhirad,* 536 F.2d 478 (finding on habeas corpus review of an extradition order that "it is fair that India be required to show by a preponderance of the evidence that the statute of limitations has been tolled"), and having found no support for the Government's contention that review is appropriate only as of the date of the Magistrate Judge's Order, this Court will consider Skaftouros's statute of limitations argument.

Skaftouros claims that the statute of limitations for homicide is twenty years after the commitment of the offense. (Mem. L. Mot. Dismiss, 4.) The Government agrees, but points to Article 113 of the Greek Criminal Code, which provides that the statute of limitations may be tolled for up to five years when it is not possible to commence or continue a prosecution. (Gov. Resp. Mot. Dismiss, 5.) In a letter to this Court, the Government attached a letter dated July 12, 2010 from the Public Prosecutor of the Court of Ap-

peal of Athens, which stated that by virtue of an order dated October 24, 1991, the statute of limitations as to Skaftouros had been tolled for five years. (Gov. Ltr. July 15, 2010.)

The Public Prosecutor writes that "A valid Arrest Warrant has been rendered under No. 20/22–6–1990 by the 8th Regular Interrogation Judge of Athens, the validity of which was retained by the virtue of Order No. 1703/1991 rendered by the Council of the Magistrate Judges of Athens." (Gov. Ltr. Aug. 20, 2010, Attachment p. 3.) As this Court has found, however, there was no valid arrest warrant issued for Skaftouros, because the warrant was not signed by the clerk. Accordingly, there was no "validity" to retain by Order 1703/1991.

Even were the arrest warrant valid, the Government has not provided adequate proof that the Order extending the statute of limitations was served on Skaftouros or his close relative, which is necessary for the order to become binding. (Mem. L. Mot. Dismiss, 8; Lind Aff. Ex. C.) The Government attaches three documents: (1) Order number 16/91 dated October 24, 1991; (2) a cover letter dated May 6, 1991 (Ref. No. 1016/93/515) mentioning Reference No. 148/91 dated April 17, 1991 from the Public Prosecutor and purporting to attach a certificate of service (though the certificate itself is not provided) showing that the "above-referenced document" was served on Skaftouros's mother; and (3) the Prosecutor's direction to the Police Department to serve document 1703/91 (Bill No. 148/91, Ref. No. 15.025, dated April 17, 1991). (Gov. Resp. Mot. Dismiss, Ex. A.)

Without the certificate of service, the cover letter and request for service establish only that the Public Prosecutor requested service of Bill No. 1703/91, and the police received that request. Neither document establishes that the Bill was in fact served. The Order that then purports to toll the statute of limitations states that Skaftouros was "irrevocably referred by virtue of the Bill 1703/1991," which the Government has not shown was ever served.

The Government does not provide the Court with an explanation of the documents, which are difficult to cross-reference given that they contain inconsistent reference numbers, dates, and police precincts. Nor do they provide an expert opinion that might give this Court a basis for excusing the absence of a certificate of service. Instead, the Government simply argues that this Court may not review due process under Greek Law. (Gov. Resp. Mot. Dismiss, 2.)

■ Although this Court should defer to a foreign sovereign's reasonable interpretation of its own laws, see, e.g., In re Extradition of Pineda Lara, No. 97 Cr. Misc. 1, 1998 WL 67656, at *6 (S.D.N.Y. Feb. 18, 1998) ("A foreign government's determination and/or documentary evidence that a defendant's conduct constitutes a crime under its laws carries significant weight."), it may not take on faith that the requirements of the Treaty have been satisfied. See Sacirbey, 589 F.3d at 67; Caltagirone v. Grant, 629 F.2d 739, 744 (2d Cir.1980) (finding that Italy's decision to apply for provisional arrest of a potential extraditee should not be "taken as an unreviewable determination that the application conforms to all Treaty provisions.")

■ Although the Government need not prove beyond a reasonable doubt that the statute of limitations has not run in an extradition proceeding, see Jhirad, 536 F.2d at 484–85, the plain language of the Treaty obligates this Court to review whether the statute of limitations has expired in the requesting country. Treaty

Art. V. The Government's letter to Magistrate Judge Kevin N. Fox, dated September 26, 2008, stated that "according to the documents submitted by Greece in support of extradition, the statute of limitations for ... intentional homicide, is 20 years from the date of the offense." (Lind Aff. Ex. B.) The internally inconsistent documents submitted without sufficient explanation do not serve to meet even the Government's lesser burden of proof on the statute of limitations issue.

Skaftouros's Motion to Dismiss the extradition proceedings is therefore GRANTED.

### III. CONCLUSION

The Petition for Writ of Habeas Corpus is GRANTED.

The Extradition Certification and Order of Commitment issued by the Hon. Theodore H. Katz, Magistrate Judge of the United States District Court for the Southern District of New York is VACATED.

Petitioner's Motion to Dismiss the Extradition Proceedings is GRANTED.

SO ORDERED.

### *MEMORANDUM & ORDER*

On December 20, 2010, this Court signed a Memorandum and Order granting Dimitrios Skaftouros's Petition for Habeas Corpus and Motion to Dismiss the Extradition Proceedings on the grounds that the requirements of the Extradition Treaty Between the United States of America and Greece, United States–Greece, May 6, 1931, 47 Stat. 2185 (the "Treaty") were not met. Specifically, this Court found that the Government had failed to prove both that a valid arrest warrant was in place and that prosecution was not time-barred, as the Treaty requires in Articles XI and V, respectively.

Now before the Court is the Government's Motion for Reconsideration of the December 20, 2010 Order. For the reasons stated herein, the Government's Motion for Reconsideration is DENIED.

■ The standard for granting a motion to reconsider "is strict, and reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked—matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995); *see also Range Road Music, Inc. v. Music Sales Corp.*, 90 F.Supp.2d 390, 392 (S.D.N.Y.2000) (holding that a motion for reconsideration "is appropriate only where the movant demonstrates that the Court has overlooked controlling decisions or factual matters that were put before it on the underlying motion ... and which, had they been considered, might have reasonably altered the result before the court."). In addition, "The standards governing a motion to alter or amend judgment pursuant to Rule 59(e) and motions for reconsideration or reargument pursuant to Local Rule 6.3 are the same." *Word v. Croce*, No. 00 Civ. 6496, 2001 WL 755394, at *2 (S.D.N.Y. July 5, 2001).

Furthermore, a motion for reconsideration is not one in which a party may reargue "those issues already considered when a party does not like the way the original motion was resolved." *In re Houbigant, Inc.*, 914 F.Supp. 997, 1001 (S.D.N.Y.1996). Thus Local Rule 6.3 should be "narrowly construed and strictly applied" to avoid repetitive arguments already submitted to the Court. *National Congress for Puerto Rican Rights v. City of New York*, 191 F.R.D. 52, 53 (S.D.N.Y.1999) (citation omitted). Moreover, the parties "may not address facts, issues or arguments not previously presented to the Court," *U.S. Ti-*

*tan v. Guangzhou Zhen Hua Shipping Co., Ltd.*, 182 F.R.D. 97, 100 (S.D.N.Y. 1998) (citations omitted), because a motion to reconsider should never act "as a substitute for appealing from a final judgment." *Bonnie & Co. Fashions, Inc. v. Bankers Trust Co.*, 170 F.R.D. 111, 113 (S.D.N.Y. 1997) (citation omitted).

The Government has not met the standard for reconsideration. Even if this Court were to reconsider, none of the documents upon which the Court based its December 20 Opinion established the validity of the warrant to extend the statute of limitations from twenty to twenty-five years. The additional submissions from the Government that were sent to the Court on January 3, 2011, include an affidavit and a certification from the Greek prosecutor, Anna Zairi. The affidavit encloses two documents—an order for service and a police document purporting to attach a certificate of service on Petitioner's mother. There is no attachment, and it is that attachment which is one of the "two documents [needed to] prove the service of the order of the Magistrates Court to the mother of Dimitrios Skaftouros. *This service interrupted the time limitation of the offence* which is now 25 years after the time of the offence. So we have five more years to prosecute the concrete person." (emphasis added) (Zairi Aff. 1.)

The second document is a certification, which states that the document necessary to extend the statute of limitations to twenty-five years was "stolen" and therefore they "proceed for the prosecution of the subject based on the document mentioned before," (Zairi Aff. 2), which merely requests service of the arrest warrant. Thus, the very document that would establish the validity of the warrant to extend the statute of limitations to twenty-five years, is missing.

The Petition for Writ of Habeas Corpus before this Court was fully submitted by October 30, 2009. While the Petition was *sub judice*, the Petitioner raised the question of the validity of the warrant following the Second Circuit's decision in *Sacirbey v. Guccione*, 589 F.3d 52 (2d Cir.2009), in December 2009. An obvious consequence of the validity of the warrant was whether it was sufficient to extend the statute of limitations to twenty-five years.

One of the bases upon which Petitioner challenged the warrant's validity was the fact that, Petitioner alleges, it was never served on the Petitioner as required by Greek law. (Mem. L. Supp. Mot. Dismiss, 8; Rep. Mem. Supp. Mot. Dismiss, 3–4.) The Government chose not to address the allegation that Greek law required proper service, despite the fact that they conceded that Greek law applied because it had an applicable statute of limitations. (Gov. Resp. Mot. Dismiss, 4 (arguing that the relevant statute of limitations was the Greek statute measured as of the date Magistrate Judge Katz granted the Certificate of Extraditability).)

Without a valid warrant, the statute of limitations expired on or about March 21, 2010, and extradition after that date would be in violation of the Treaty, which provides in Article V that "A fugitive criminal shall not be surrendered under the provisions hereof when, from lapse of time or other lawful cause, according to the laws of either of the surrendering country or the demanding country, the criminal is exempt from prosecution or punishment for the offense for which the surrender is asked."

Accordingly, the Government's Motion for Reconsideration is DENIED. The Court hereby stays its Order of December 20, 2010, for forty-five days to permit the Government to appeal this denial of recon-

sideration and the underlying Order of December 20, 2010.

SO ORDERED.