**NOT FOR PUBLICATION**

**FILED**

**UNITED STATES COURT OF APPEALS**

JUL 23 2024

**FOR THE NINTH CIRCUIT**

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

SUMONTINEE SRIDEJ,

          Petitioner-Appellant,

  v.

ANTONY J. BLINKEN; et al.,

          Respondents-Appellees.

No.   23-16021

D.C. No.
2:23-cv-00114-ART-BNW

MEMORANDUM[*]

Appeal from the United States District Court
for the District of Nevada
Anne R. Traum, District Judge, Presiding

Argued and Submitted May 8, 2024
Pasadena, California

Before: WARDLAW, CHRISTEN, and BENNETT, Circuit Judges.

    In this extradition case, Appellant Sumontinee Sridej appeals the district

court's order denying her petition for a writ of habeas corpus pursuant to 28 U.S.C.

§ 2241. She argues the district court erred by concluding that the extradition treaty

between Thailand and that the United States remains in force and that the fraud

---

    [*]    This disposition is not appropriate for publication and is not precedent
except as provided by Ninth Circuit Rule 36-3.

charges brought by Thailand are extraditable offenses.[1]  "We review de novo the district court's denial of a habeas petition in extradition proceedings."  *United States v. Knotek*, 925 F.3d 1118, 1124 (9th Cir. 2019).  "'[E]xtradition is a matter of foreign policy,' a diplomatic process over which the judiciary provides 'limited' review."  *Id.* (quoting *Vo v. Benov*, 447 F.3d 1235, 1237, 1240 (9th Cir. 2006)).  We have jurisdiction pursuant to 28 U.S.C. § 1291, and we affirm.

1.      We first address whether the extradition treaty between the United States and Thailand remains in force.  "The continuing validity" of a treaty "presents a political question," and courts "must defer to the intentions of the State Departments of the two countries."  *Then v. Melendez*, 92 F.3d 851, 854 (9th Cir. 1996); *see also In re Tuttle*, 966 F.2d 1316, 1317 (9th Cir. 1992).  Here, despite the evidence of political unrest and regime changes in Thailand, both the United States and Thailand have manifested an intention that the treaty remain in effect.

The United States submitted a declaration from a State Department attorney adviser, who states that the extradition treaty between the United States and Thailand "is currently in force."  The treaty is also listed in the State Department's official publication of treaties that remain in force.  The attorney adviser further declares that "changes in government" and "internal unrest" have not "annulled or

---

[1] We address Sridej's argument concerning her risk of torture if returned to Thailand in a concurrently filed opinion.

2

terminated" the treaty, and that neither the United States nor Thailand has taken steps to terminate or suspend the treaty. Moreover, the declaration indicates that Thailand and the United States maintain an active extradition relationship.

Because the United States and Thailand have continued to recognize the treaty as valid, we defer to those intentions. *See Then*, 92 F.3d at 854.

2.  We next consider whether the Thai fraud charges are extraditable offenses under the treaty. An offense is extraditable under the treaty "only if it is punishable under the laws of both [the United States and Thailand] by imprisonment or other form of detention for a period of more than one year or by any greater punishment." Under this principle of dual criminality, an offense is extraditable "if the 'essential character' of the acts criminalized by the laws of each country are the same and the laws are 'substantially analogous.'" *Manta v. Chertoff*, 518 F.3d 1134, 1141 (9th Cir. 2008) (quoting *Oen Yin-Choy v. Robinson*, 858 F.2d 1400, 1404 (9th Cir. 1988)).

Because Sridej's alleged conduct would be criminal in both Thailand and the United States, we conclude that the fraud charges are extraditable offenses. Thai Penal Code Section 341,[2] a fraud offense, is substantially analogous to Nevada's

---

[2] This section provides: "Whoever dishonestly deceives another person by expressing with a false statement or by suppressing true facts that should be revealed, and, by such deception, obtains any property from the person so deceived or a third person . . . is said to commit the offense of fraud . . . ."

grand larceny offense, Nev. Rev. Stat. § 205.220.[3] Unlike fraud under Thai law, Nevada law requires "the specific intent to permanently deprive the owner of his property." *Harvey v. State*, 375 P.2d 225, 226 (Nev. 1962). But we have "have found two crimes to be substantially analogous despite differences in their required elements." *Knotek*, 925 F.3d at 1132. For instance, we concluded that a German fraud offense and an American fraud offense were sufficiently analogous to satisfy dual criminality, even though the German crime did not require "a knowing false representation of a material fact made with the intent to deceive." *Emami v. U.S. Dist. Ct. for N. Dist. of Cal.*, 834 F.2d 1444, 1449–50 (9th Cir. 1987). "[I]t is enough that the conduct involved is criminal in both countries." *Manta*, 518 F.3d at 1141 (quoting *Oen Yin-Choy*, 858 F.2d at 1404–05). Here, Sridej's alleged conduct likely violates Nevada's grand larceny statute, including its mens rea, because one may readily infer from that conduct that she intended to permanently deprive her employer of electronics products. *See id.* at 1143–44 (inferring an intent to defraud from the conduct on which the foreign charges were based).

Accordingly, the Thai fraud charges are extraditable offenses. *Id.* at 1141.

**AFFIRMED.**

---

[3] A person commits grand larceny when she "[i]ntentionally steals, takes and carries away, leads away or drives away: [p]ersonal goods or property, with a value of $1,200 or more, owned by another person." Nev. Rev. Stat. § 205.220(1)(a).