### In re AIR CRASH AT GEORGETOWN, GUYANA, ON JULY 30, 2011.

**Rajendra Persaud and Prampatie Persaud, Plaintiffs,**

v.

**Caribbean Airlines Limited, Defendant.**

**Shanti Persaud; C.P., a minor, by and through her mother and natural guardian Shanti Persaud; and C.P., a minor, by and through her mother and natural guardian Shanti Persaud, Plaintiffs,**

v.

**Caribbean Airlines Limited, Defendant.**

Nos. 12–md–2395 (ARR)(JMA), 12–cv–4891 (ARR)(JMA), 13–cv–230(ARR)(JMA).

United States District Court, E.D. New York.

Signed May 16, 2014.

Filed May 21, 2014.

Order Amending Aug. 13, 2014.

Curtis B. Miner, Colson Hicks Eidson, Coral Gables, FL, for Plaintiffs.

John Maggio, Condon & Forsyth LLP, New York, NY, Robert C. Owens, Homestead, FL, for Defendant.

## ORDER AND OPINION

ROSS, District Judge:

This is a personal injury action arising from the crash landing of Caribbean Airlines Flight BW 523 in the Republic of Guyana ("Guyana") in 2011. The issue before this court is whether Guyana is a party to the Warsaw Convention ("Convention").[1] If Guyana is a party to the treaty, then the Convention governs this case—and its forum provision would deprive the court of subject matter jurisdiction.[2] For the reasons discussed below, the court holds that Guyana is not a party to the Warsaw Convention. The court therefore denies defendant's motion to dismiss for lack of subject matter jurisdiction.[3]

## I. BACKGROUND

On July 30, 2011, Plaintiffs Rajendra Persaud, Prampatie Persaud, Shanti Persaud, and minors C.P. and C.P. (together,

"plaintiffs" or "the Persauds") were traveling on one-way tickets from Florida to Georgetown, Guyana. Decl. of Stephanie A. Casey, Dkt. # 24, Ex. A, ¶ 1 [hereinafter Casey Decl.]; Casey Decl., Ex. C, ¶ 1; see Decl. of Nalini D. Lalla, Dkt. # 19, ¶¶ 11, 12 & Exs. A, B [hereinafter Lalla Decl.]. Plaintiffs had a connection in Trinidad, where they boarded Flight BW 523. Casey Decl., Ex. A, ¶ 2; Casey Decl., Ex. C, ¶ 2. While landing in Georgetown, the flight overshot the runway, and the subsequent impact cracked the plane's fuselage in half, Casey Decl., Ex. A, ¶¶ 2, 3; Casey Decl., Ex. C, ¶¶ 2, 3. Plaintiffs each sustained personal injuries from the incident. Casey Decl., Ex. A, ¶ 15; Casey Decl., Ex. C, ¶¶ 15.

Subsequently, Rajendra and Prampatie brought suit against defendant Caribbean Airlines Limited ("Caribbean" or "defendant"), asserting a cause of action for damages under the Warsaw Convention. See Casey Decl., Ex. A, at 5–9. Shanti, C.P., and C.P. commenced a separate suit against defendant, asserting common law claims for negligence, or, in the alternative, claims for damages under the Warsaw Convention. See Casey Decl., Ex. C, at 5–15.

1. The Warsaw Convention is the common name for the Convention for the Unification of Certain Rules Relating to International Transportation by Air, Oct. 12, 1929, 49 Stat 3000, 3014, T.S. No. 876 (entered into force in the United States in 1934, reprinted in 49 U.S.C. § 40105 [hereinafter Warsaw Convention]); see Aff. of John Maggio, Dkt. # 17, Ex. 11.

2. An action under the Warsaw Convention "must be brought" in one of the four following forums: (1) the "domicile of the carrier"; (2) the "principal place of business" of the carrier; (3) where the carrier "has a place of business through which the contract has been made"; or (4) "before the court at the place of destination." Warsaw Convention art. 28(1). Defendant argues that the United

States does not, under the facts of this case, constitute one of these four forums. See Caribbean Airlines Limited's Mem. of Law in Supp. of its Mot. to Dismiss for Lack of Subject Matter Jurisdiction, Dkt. # 20, at 11–12. Plaintiffs do not disagree. The court therefore assumes, without deciding, that it would lack subject matter jurisdiction to adjudicate this case under the Warsaw Convention.

3. The Second Circuit has distinguished between subject matter jurisdiction in the "international or treaty sense" and "in the domestic law sense." Benjamins v. British European Airways, 572 F.2d 913, 915 (2d Cir.1978) (internal quotation marks omitted). The parties' dispute centers on whether the court has subject matter jurisdiction in the "international or treaty sense." Id.

Caribbean now moves to dismiss both actions under Federal Rule of Civil Procedure 12(h)(3), arguing that the court lacks subject matter jurisdiction over plaintiffs' claims. *See* Caribbean Airlines Limited's Mem. of Law in Supp. of its Mot. to Dismiss for Lack of Subject Matter Jurisdiction, Dkt. # 20, at 2 [hereinafter Caribbean Mem.]. Specifically, defendant maintains that the Warsaw Convention governs this case and that the treaty's forum provision deprives the court of subject matter jurisdiction. *See id.* at 4 (citing Warsaw Convention art. 28(1)).

Plaintiffs, however, contend that Guyana is not a party to the Warsaw Convention and that the treaty—and its forum provision—are therefore inapplicable here. Pls.' Response and Mem. of Law in Opp'n to Def.'s Mot. to Dismiss, Dkt. # 22, at 19–20 [hereinafter Pls.' Mem.]. In light of their position, Rajendra and Prampatie request leave to amend their complaint to assert common law negligence claims. *See id.* at 20.

## II. STANDARD OF REVIEW

■ "If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action." Fed.R.Civ.P. 12(h)(3). "A plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists." *Makarova v. United States,* 201 F.3d 110, 113 (2d Cir. 2000). "[J]urisdiction must be shown affirmatively, and that showing is not made by drawing from the pleadings inferences favorable to the party asserting it." *Shipping Fin. Servs. Corp. v. Drakos,* 140 F.3d 129, 131 (2d Cir.1998). Rather, "a district court may resolve disputed factual issues by reference to evidence outside the pleadings, including affidavits." *State Emps.*

*Bargaining Agent Coal. v. Rowland,* 494 F.3d 71, 77 n. 4 (2d Cir.2007).

## III. DISCUSSION

This case presents a question of first impression: whether Guyana is a party to the Warsaw Convention. The resolution of this issue determines whether the Convention governs plaintiffs' claims and, accordingly, whether the Convention's forum provision deprives this court of subject matter jurisdiction.

■ The Warsaw Convention is an international treaty that applies to "all international transportation of persons, baggage, or goods performed by aircraft for hire." Warsaw Convention art. 1(1); Aff. of John Maggio, Dkt. # 17, Ex. 11. The treaty defines "international transportation" to include "any transportation in which, according to the contract made by the parties, the place of departure and the place of destination, whether or not there be a break in the transportation or a transshipment, are situated ... within the territories of two High Contracting Parties." *Id.* art. 1(2). The Convention provides the exclusive cause of action for personal injuries arising from "international transportation" and preempts any corresponding state law causes of action. *See id.* arts. 17, 24; *King v. Am. Airlines, Inc.,* 284 F.3d 352, 356–57 (2d Cir.2002) (citing *El Al Israel Airlines, Ltd. v. Tseng,* 525 U.S. 155, 169–70, 119 S.Ct. 662, 142 L.Ed.2d 576 (1999)).

Whether Flight BW 523 qualifies as "international transportation" within the meaning of the Convention depends on whether Florida, "the place of departure," and Georgetown, "the place of destination," are both situated "within the territories of two High Contracting Parties." Warsaw Convention art. 1(2). The United States is a party to the Convention. *See Republic Nat'l Bank of N.Y. v. Delta Air*

*Lines,* 263 F.3d 42, 44 n. 1 (2d Cir.2001); U.S. Dep't of State, *Treaties in Force: A List of Treaties and Other International Agreements of the United States in Force on January 1, 2011,* at 325 (2011) [hereinafter *Treaties in Force*], *available at* www.state.gov/documents/organization/169274.pdf. However, the parties disagree as to whether Guyana is also a party.

The uncertainty of Guyana's status arises from the following historical context: The United Kingdom signed the Warsaw Convention in 1929. *See* Carriage by Air Act, 1932, 22 & 23 Geo. 5, c. 36 (U.K.). At the time, British Guiana—the predecessor to Guyana—was a colony of the United Kingdom. Decl. of Nigel Hughes, Dkt. # 18, ¶ 4 [hereinafter Hughes Decl.]. Article 40 of the Convention provides that "[a]ny High Contracting Party may, at the time of signature ... declare that the acceptance which it gives to this Convention does not apply to all or any of its colonies, protectorates, territories under mandate, or any other territory subject to its sovereignty or its authority...." Warsaw Convention art. 40, The United Kingdom did not, at the time of signature, exclude any of its territories from the application of the Convention.

Subsequently, the United Kingdom enacted the Carriage by Air Act, 1932, which provided, "As from such day as His Majesty may by Order in Council certify to be the day on which the Convention comes into force as regards the United Kingdom, the provisions thereof ... shall ... have the force of Law in the United Kingdom...." *Id.* § 1(1). The statute also provided, "His Majesty may by Order in Council from time to time certify who are the High Contracting Parties to the Convention, [and] in respect of what territories they are respectively parties." *Id.* § 1(2).

Thereafter, the United Kingdom passed the Carriage by Air Order, 1933, which certified that the Convention came into force in the United Kingdom on May 15, 1933. Carriage by Air Order, 1933, No. 226, § 1 (U.K.). The following year, the United Kingdom enacted the Carriage by Air Order, 1934, which extended the Convention to British Guiana. *See* Carriage by Air Order, 1934, No. 915, § 2 & sched. 1, 2 (U.K.). Subsequently, the United Kingdom passed the Carriage by Air Order, 1935, which certified that the Convention came into force in British Guiana on March 3, 1935. *See* Carriage by Air Order, 1935, No. 150, § 1 (U.K.).

On May 26, 1966, however, British Guiana gained independence from the United Kingdom, Hughes Decl. ¶ 4, thereby gaining "fully responsible status" within the British Commonwealth, *see* Guyana Independence Act (1966) (Guyana) [hereinafter Independence Act], *available at* http://www.legislation.gov.uk/ukpga/1966/14/pdfs/ukpga_19660014_en.pdf. The commonwealth country of Guyana subsequently became the Republic of Guyana on February 20, 1970. *See* Republic Act (1970) (Guyana), Hughes Decl., Ex. A [hereinafter Republic Act].

As an independent country, Guyana has never formally acceded to the Warsaw Convention. *See* Decl. of Paul Stephen Dempsey, Dkt. # 23, ¶¶ 23, 24 [hereinafter Dempsey Decl.]; *see also Black's Law Dictionary* (9th ed.2009) (defining "accession" as "[a] method by which a nation that is not among a treaty's original signatories becomes a party to it"). The issue before this court is thus whether—as of the crash of Flight BW 523 in 2011—Guyana remained bound by the rights and obligations created when the United Kingdom signed the Convention.

## A. Legal Standard

 "It is well settled that 'on the question whether [a] treaty has ever been

terminated, governmental action in respect to it must be regarded as of controlling importance.'" *N.Y. Chinese TV Programs, Inc. v. U.E. Enters., Inc.,* 954 F.2d 847, 852 (2d Cir.1992) (quoting *Terlinden v. Ames,* 184 U.S. 270, 285, 22 S.Ct. 484, 46 L.Ed. 534 (1902)); *accord Blake v. Am. Airlines,* 245 F.3d 1213, 1215–16 (11th Cir. 2001) (recognizing the "controlling importance" of governmental conduct in determining whether the Warsaw Convention, which the United Kingdom had signed on behalf of the colony of Jamaica, remained in force between the United States and the independent country of Jamaica); *Saroop v. Garcia,* 109 F.3d 165, 171 (3d Cir.1997) ("Whether a treaty remains in force after a change in the sovereign status of one of the signatories has been treated by other Courts of Appeals as a political question better left to the executive branch of government."). "[T]he judiciary should refrain from determining whether a treaty has lapsed, and instead should defer to the wishes of the elected branches of government." *N.Y. Chinese TV Programs,* 954 F.2d at 852; *accord Mingtai Fire & Marine Ins. Co. v. United Parcel Serv.,* 177 F.3d 1142, 1146 (9th Cir.1999). In accordance with the "deference [courts] owe to the political branches of the government in treaty matters," *N.Y. Chinese TV Programs,* 954 F.2d at 852, "the opinion of the Department of State on the existence of treaty relations should be taken into account," *Chubb & Son, Inc. v. Asiana Airlines,* 214 F.3d 301, 313 (2d Cir.2000).

Although plaintiffs urge the court to apply the Vienna Convention on the Law of Treaties, May 23, 1969, 1155 U.N.T.S. 331 [hereinafter Vienna Convention] to determine Guyana's status with respect to the Warsaw Convention, the Vienna Convention does not apply here. It is true that the Second Circuit has previously "determine[d] whether States are parties to a substantive treaty by applying the custom-

ary international law of treaties" and has recognized that the customary international law of treaties "to a large extent has been codified in the Vienna Convention." *Chubb,* 214 F.3d at 307–08; *see also id.* ("'Customary international law results from a general and consistent practice of states followed by them from a sense of legal obligation.'" (quoting Restatement (Third) of the Foreign Relations of the United States § 102(2) (1986))). However, the Vienna Convention—by its own terms—does not address "any question that may arise in regard to a treaty from a succession of States." Vienna Convention art. 73; *see also* Vienna Convention on Succession of States in Respect of Treaties, Nov. 6, 1996, 1946 U.N.T.S. 3, art. 2 (defining "succession of States" as "the replacement of one State by another in the responsibility for the international relations of territory"). The court thus declines plaintiff's invitation to apply the Vienna Convention here. *See* Pls.' Mem. 6.

There is, moreover, no clear customary international law with respect to treaty succession. *See* Anthony Aust, *Modern Treaty Law and Practice* 324 (3d ed. 2013) ("Although since the Second World War some hundred colonies or other overseas territories ... have attained their independence, the practice of newly independent states has not been consistent. It is therefore not possible to promulgate a set of rules of customary international law on state succession applicable in such situations."). The absence of settled customary international law in this area underscores the importance of evaluating the United States and Guyanese governments' positions on whether the Warsaw Convention remains in force between the two countries.

## B. Position of the U.S. Government

To determine the U.S. government's position on whether treaty relations exist

between the United States and other countries, the Second Circuit has routinely consulted (among other evidence, none of which exists here) the State Department's *Treaties in Force* publication. *See, e.g., Avero Belgium Ins. v. Am. Airlines, Inc.,* 423 F.3d 73, 83 (2d Cir.2005); *N.Y. Chinese TV Programs,* 954 F.2d at 853; *accord Blake,* 245 F.3d at 1216; *Mingtai Fire & Marine Ins. Co.,* 177 F.3d at 1146. This annual "publication lists treaties and other international agreements of the United States on record in the Department of State ..., which ha[ve] not expired by their own terms or which ha[ve] not been denounced by the parties, replaced, superseded by other agreements, or otherwise definitely terminated." *Treaties in Force* at front cover (2011).

The 2011 edition of *Treaties in Force* does not list Guyana as a party to the Warsaw Convention. *See id.* at 325. Though not dispositive, Guyana's omission from this list constitutes persuasive evidence that that the State Department considers any treaty relations between the United States and Guyana under the Convention to have "definitely terminated." This conclusion is corroborated by unambiguous language, at the very outset of the publication, declaring that "[t]he depositary[4] is the authoritative source for a current list of parties [to a multilateral treaty]."[5] *Foreword to Treaties in Force* Poland is the depositary for the Warsaw Convention, *see* Warsaw Convention art.

36, and Guyana is notably missing from the list of parties to the treaty maintained by the Polish government, *see* Ministry of Foreign Affairs, Republic of Poland, Internet Treaty Database, http://www.traktaty. msz.gov.pl/Parties.aspx?id=2769 (last visited Apr. 19, 2014); Int'l Civil Aviation Org. ("ICAO"), Contracting Parties to the Convention for the Unification of Certain Rules Relating to International Carriage by Air Signed at Warsaw on 12 October 1929 and the Protocol Modifying the Said Convention Signed at the Hague on 28 September 1955, Dkt. #15, Ex. 1, at 1 (reproducing "the information received from the depositary, the Government of the Republic of Poland").

Revisions to successive editions of *Treaties in Force* provide further, compelling evidence that the State Department deliberately omitted Guyana from the list of parties to the Warsaw Convention in the 2011 publication. In the 1969 edition of *Treaties in Force*—published three years after Guyana achieved independence—the State Department *included* Guyana as a party to the Warsaw Convention. See U.S. Dep't of State, *Treaties in Force: A List of Treaties and Other International Agreements of the United States in Force on January 1, 1969,* at 263 (1969), *available at* https://ia600808.us.archive.org/28/ items/ahf0346.1969.001.umich.edu/ahf0346. 1969.001.umich.edu.pdf. Guyana's listing was, moreover, linked through footnotes to

---

4. A depositary is a government or organization to which a multilateral treaty is entrusted, and which undertakes functions such as "keeping custody of the original text of the treaty" and "receiving any signatures to the treaty and receiving and keeping custody of any instruments, notifications, and communications relating to it." Vienna Convention arts. 76, 77.

5. The State Department's position that the depositary is the authoritative source as to the list of parties to a multilateral treaty is consis-

tent with the Vienna Convention on the Succession of States in Respect of Treaties. *See supra,* art. 17 ("[A] newly independent States may, by a notification of succession, establish its status as a party to any multilateral treaty which at the date of the succession of States was in force in respect of the territory to which the succession of States relates."); *see also id.* art. 22 ("[T]he notification of succession shall ... be transmitted by me newly independent States to me depositary....").

a June 30, 1966 letter from the Prime Minister of Guyana stating, "It is desired [by the Government of Guyana] that it be presumed that each treaty [that had applied to British Guiana through the United Kingdom's conduct] has been legally succeeded to by Guyana and that action be based on this presumption until a decision is reached that it should be regarded as having lapsed."[6] *Id.* at 263 n. 5, 260 n. 11. The reference to the Guyanese Prime Minister's letter indicates that the State Department actively considered how Guyana's independence affected the country's treaty relations and affirmatively concluded that Guyana remained a party to the Warsaw Convention.

By at least 1997, however, the State Department began omitting Guyana from the list of parties to the Warsaw Convention in *Treaties in Force.*[7] *See Treaties in Force: A List of Treaties and Other International Agreements of the United States in Force on January 1, 1997,* at 329–30 (1997), *available at* http://dosfan.lib.uic.edu/acda/state/tifjan97.pdf. And instead of continuing to footnote the Guyanese Prime Minister's June 30, 1966 letter, the State Department began inserting a new footnote that stated, "The status of certain states to which the convention was applicable prior to their becoming independent is not determined." *Id.* at 330 n. 1. Together, these editorial actions suggest that the State Department no longer presumed Guyana to be a party to the Convention, but had yet to determine that Guyana was not a party to the treaty. *Cf. Blake,* 245 F.3d at 1216 (concluding that the State Department had "taken no position" on whether Jamaica was a party to the Warsaw Convention, based on a footnote in the 1999 version of *Treaties in Force* that was identical to the aforementioned footnote in the 1997 version).

Beginning in 2002, however, the State Department began omitting from *Treaties in Force* the footnote indicating the undetermined status of states to which the Warsaw Convention had applied prior to their becoming independent. *See Treaties in Force: A List of Treaties and Other International Agreements of the United States in Force on January 1, 2002,* at 343 (2002), *available at* http://www.state.gov/documents/organization/17524.pdf; Pls.'s Mem. 17 ("This language, however, was removed in the 2002 version of TREATIES IN FORCE and all subsequent versions, including the most recent 2012 version."). The court agrees with plaintiffs that this change is significant. It lends substantial support to a conclusion that the State Department "no longer takes the position that the status of States such as Guyana is undetermined." *Id.; cf. United States v. Able Time, Inc.,* 545 F.3d 824, 831 (9th Cir.2008) ("The sequence of enactments of and amendments to the relevant statutes strongly supports the inference that the omission of an identity of goods or services requirement from the Tariff Act was intentional."). It appears, instead, that the State Department now considers states such as Guyana *not* to be parties to the Convention.

In sum, based on the plain text of the 2011 edition of *Treaties in Force,* which is corroborated by the State Department's revisions to the publication over time, the court concludes that it is the United States' government's position that Guyana is no longer a party to the Warsaw Con-

---

**6.** This letter is discussed in further detail below. *See infra* Section III.C.

**7.** Aside from the 1969 version, the earliest version of *Treaties in Force* to which the court has access is the 1997 version. Accordingly, it is difficult to ascertain when the State Department began omitting Guyana from the list of parties to the Warsaw Convention.

vention. Defendant has not presented any evidence showing that the United States government has taken a contrary position.[8]

### C. Position of the Guyanese Government

The conduct of the Guyanese government, in contrast, supports conflicting inferences as to that government's position on whether Guyana is a party to the Warsaw Convention.

As an independent country, Guyana has never formally acceded to the Warsaw Convention. *See* Dempsey Decl. ¶¶ 23, 24. Article 38 of the Convention provides that the Convention shall "remain open for adherence by any state" through "notification addressed to the Government of the Republic of Poland, which shall inform the Government of each of the High Contracting Parties thereof." Warsaw Convention art. 38(1), (2). Guyana has never notified the Polish government of its intent to accede to the Convention. Dempsey Decl. ¶ 24.

In contrast, Guyana has formally acceded to other treaties—including other aviation treaties—that the United Kingdom had entered while British Guiana was still a colony of the United Kingdom. For example, the United Kingdom ratified the Convention on International Civil Aviation of 1944 ("Chicago Convention") in 1947. *See* ICAO, Convention on International Civil Aviation Signed at Chicago on 7 December 1944. http://www.icao.int/publications/Documents/chicago.pdf (last visited May 11, 2014) [hereinafter ICAO, List of Parties to the Chicago Convention]. Like the Warsaw Convention, the Chicago Convention applied to the colonies of the contracting parties. *See* Convention on International Civil Aviation, art. 2, Dec. 7, 1944, 61 Stat. 1180, 15 U.N.T.S. 29 ("For the purposes of this Convention the territory of a State shall be deemed to be the land areas and territorial waters adjacent thereto under the sovereignty, suzerainty, protection or mandate of such State."). Notwithstanding the Chicago Convention's application to British Guiana, Guyana formally adhered to the Chicago Convention in 1967—one year after independence. *See* ICAO, List of Parties to the Chicago Convention; Dempsey Decl. ¶ 29. Notably, the State Department lists Guyana as a party to the Chicago Convention in *Treaties in Force*. *See Treaties in Force* 390 (2011).

As another example, the United Kingdom ratified the International Air Services Transit Agreement ("Transit Agreement") in 1945. *See* ICAO, International Air Services Transit Agreement Signed at Chicago on 7 December 1944, http://www.icao.int/secretariat/legal/List%20of%20Parties/Transit_EN.pdf (last visited May 11, 2014). As with the Warsaw Convention, the Transit Agreement applied to the colonies of the contracting parties. See International Air Services Transit Agreement, art. 5, Dec. 7, 1944, 59 Stat. 1693, 84 U.N.T.S. 389. Although the Transit Agreement applied to British Guiana, Guyana formally adhered to the Transit Agreement in 1985. In addition, Guyana appears as a party to the Transit Agreement in *Treaties in Force*. *See Treaties in Force* 326–27 (2011).

Insofar as Guyana has formally adhered to other aviation treaties that had applied to British Guiana, Guyana's failure to do so with respect to the Warsaw Convention creates a strong inference that the Guyanese government does not consider Guya-

---

**8.** Indeed, in response to an informal inquiry from the court as to whether it would issue a formal opinion on whether Guyana is a party to the Warsaw Convention, the State Department responded that it would not.

na to be a party to the Convention. That negative inference is corroborated by the actions of other former British colonies, most of which have formally acceded to the Warsaw Convention by filing notifications with the Polish government. *See* Dempsey Decl. ¶ 27 ("This is the case with the former British colonies of the Bahamas, Barbados, Botswana, Brunei Darussalam, Cyprus, Fiji, India, Jordan, Kenya, Lesotho, Malaysia, Malta, Myanmar (formerly Burma), Nauru, New Zealand, Nigeria, Pakistan, Samoa, Sierra Leone, Solomon Islands, Sri Lanka (formerly Ceylon), Trinidad, Tonga and Tobago, Zambia, and Zimbabwe."). Similarly, most of the former colonies of Belgium, France, Portugal, and the Netherlands have, as newly independent states, formally adhered to the Convention by filing notices of accession with Polish government. *Id.*

Defendant nonetheless insists that the Guyanese government has manifested a clear intent that Guyana remains a party to the Warsaw Convention. To support its contention, defendant cites the statement that the Prime Minister of Guyana addressed to the Secretary General of the United Nations on June 30, 1966, shortly after Guyana gained independence. That statement articulated, in relevant part:

> Since ... it is likely that by virtue of customary international law certain treaties may have lapsed at the date of independence of Guyana, it seems essential that each treaty should be subjected to legal examination.... It is desired that it be presumed that each treaty has been legally succeeded to by Guyana and that action be based on this presumption until a decision is reached that it should be regarded as having lapsed. Should the Government of Guyana be of the opinion that it has legally succeeded

to a treaty and wishes to terminate the operation of the treaty, it will in due course give notice of termination in the terms thereof.

*Treaties in Force* (2011) 115.[9] Defendant notes that "Guyana has never issued a notice of termination or otherwise denounced the Warsaw Convention in any way." Caribbean Mem. 8.

The implication that defendant wants the court to draw from Guyana's silence is, however, undermined by the Guyanese government's affirmative conduct in acceding to other treaties that—like the Warsaw Convention—had applied to British Guiana. That Guyana formally adhered to the Chicago Convention and Transit Agreement indicates that the Guyanese government does not consider its silence to be dispositive as to the continuity of treaty relations. To be sure, the Guyanese Prime Minister's letter would have carried significant weight several years after Guyana's independence; indeed, as reflected in the 1969 edition of *Treaties in Force,* the State Department appears to have relied on the letter to presume that Guyana remained a party to the Warsaw Convention. *See Treaties in Force* 263 n. 5, 260 n. 11 (1969). But the force of this letter has diminished over time. Almost half a century has elapsed since Guyana achieved independence, and during this time the Guyanese government has formally acceded to other treaties rather than relying on the presumption of continuity requested in the 1966 letter. In light of these circumstances, the court is hard-pressed to accord substantial weight to defendant's argument that Guyana considers itself to be a party to the Warsaw Convention simply because it has never issued a notice of

---

**9.** The 2011 edition of *Treaties in Force* reproduces this letter only in the section on *bilateral* treaties between the United States and Guyana.

termination with respect to the treaty.[10]

Defendant also points to Guyana's Republic Act as evidence that the Guyanese government considers Guyana to be a party to the Warsaw Convention. But defendant's reliance on this law is misplaced. The Republic Act simply states that "[a]ll *existing laws* shall continue to have effect as part of the law of Guyana on and after the appointed day." Republic Act § 3(1) (emphasis added). Significantly, the Republic Act defines "existing laws" as "all laws in force in, or otherwise having effect as part of the law of, Guyana immediately before the appointed day," *id.* § 2, and defines "the appointed day" as February 23, 1970, *id.* Defendant fails to note that February 23, 1970 is *not* Guyana's date of independence; Guyana became independent nearly four years earlier on May 12, 1966. *See* Independence Act.

The Republic Act is silent as to whether Guyana's independence terminated its rights and obligations under the Warsaw Convention. If Guyana ceased to be subject to the Convention upon gaining independence, then the Convention would not constitute "existing law" within the meaning of the Republic Act. And, as reflected in the Guyanese Prime Minister's June 30, 1966 letter, it is unclear whether the Guyanese considered the Convention to have lapsed upon Guyana's date of independence. *See Treaties in Force* 115 (2011)("[I]t is likely that by virtue of customary international law certain treaties may have lapsed at the date of independence of Guyana.").

Even if the Republic Act did apply to the Warsaw Convention, this would not provide a clear indication as to whether the Guyanese government considers Guyana to be a party to the treaty. The Republic Act states that "[a]ll existing laws shall continue to have effect as part of the *law of Guyana* on and after the appointed day." Republic Act § 3(1) (emphasis added). Insofar as Guyana adopted the Warsaw Convention as part of its *domestic law*, this would not be dispositive as to

---

10. It is also worth nothing that the United Nations Secretary General does not recognize "general declarations of succession"—such as the one sent by the Guyanese prime minister—to be valid instruments of succession:

> Frequently, newly independent States will submit to the Secretary–General "general" declarations of succession, usually requesting that the declaration be circulated to all States members of the United Nations. The Secretary–General duly complies with such a request ... but does not consider such a declaration as a valid instrument of succession to any of the treaties deposited with him.... In essence, those declarations usually indicate that a review of the treaties applied to the territory of the State before accession to independence is in progress and that the State concerned would specify in due course which treaties should continue to be considered as binding and which should be considered as having lapsed. Those declarations also mention that pending completion of review, it should be "presumed" (sometimes, "legally presumed")

that each treaty had been succeeded to by the State concerned, and that action should be based on that presumption. However, such a presumption, while it could possibly be used by other States as a basis for practical action, can certainly not be taken as a formal and unambiguous acknowledgment of the obligations contained in a given treaty, since it can be unilaterally reversed at any time in respect of any treaty.

United Nations, Office of Legal Affairs, Summary of Practice of the Secretary–General as Depositary of Multilateral Treaties 90 (1994), Casey Decl. Ex. I; *accord* Vienna Convention on Succession of States in Respect to Treaties, Nov. 6, 1996, 1946 U.N.T.S. 3, art. 9(1) ("Obligations or rights under treaties in force in respect of a territory at the date of a succession of States do not become the obligations or rights of the successor State or of other States Parties to those treaties by reason only of the fact that the successor State has made a unilateral declaration providing for the continuance in force of the treaties in respect of its territory.").

whether the Guyanese government considers Guyana to be bound by the Convention as a matter of *international law*. This is particularly true in light of Guyana's formal accession—on the international level—to treaties like the Chicago Convention and Aviation Treaty. If the Republic Act sufficed to make Guyana a party to those treaties, then there would have been no need for Guyana to formally adhere to those treaties.

Finally, defendant mistakenly insists that "the Guyana Court of Appeal, then the highest court in Guyana, held [in 1967] that Guyana is a party to the Warsaw Convention." Caribbean Reply Mem. 3. Defendant's citation of *Bart v. British West Indian Airways. Ltd.*, [1967] 1 Lloyd's Rep. 239 (C.A.) (Guyana), is inapposite. Nowhere in *Bart* does the Guyana Court of Appeal hold that Guyana is a party to the Warsaw Convention. Indeed, the parties in *Bart* agreed on the applicable law, *see id.* at 244, obviating the need for any holding on that issue. Moreover, even if *Bart* held that Guyana was a party to the Convention, that holding would be inapplicable here. Although *Bart* was decided after Guyana's independence, it involved a controversy that occurred *before* Guyana's independence. *See id.* at 242 (describing the incident at issue, which occurred on February 20, 1960). Accordingly, *Bart* appears to have applied pre-independence Guyanese law. That British Guiana was subject to the Warsaw Convention prior to independence says nothing about whether Guyana remained subject to the Convention after independence. Finally, even if *Bart* did stand for the proposition that defendant claims it does, the Guyana Court of Appeal is part of the Guyanese judiciary—and not one of the political branches to whom deference is owed in matters of treaty interpretation.

To summarize, it is far from clear that the Guyanese government considers Guyana to be a party to the Warsaw Convention. Indeed, Guyana's formal accession to other aviation treaties—and its contrasting failure to formally accede to the Warsaw Convention—suggests that the Guyanese government does not consider Guyana to be a party to the Convention.

**D. Satisfaction of Plaintiff's Burden**

█ Taking into consideration the positions of the United States and Guyanese governments, *see N.Y. Chinese TV Programs*, 954 F.2d at 852, the court concludes that plaintiff has proven "by a preponderance of the evidence," *Makarova*, 201 F.3d at 113, that Guyana is not a party to the Warsaw Convention—and that subject matter jurisdiction therefore exists here.

As reflected in the State Department's 2011 edition of *Treaties in Force*, as well as the revisions to that publication over the years, the U.S. government no longer considers Guyana to be a party to the Warsaw Convention. Defendant has not presented any evidence showing that the U.S. government has deviated from the position embodied in *Treaties in Force*. And although defendant maintains that the Guyanese government considers Guyana to be a party to the Convention, the evidence fails to support such a conclusion. More than anything else, Guyana's formal accession to other treaties that had applied to British Guiana suggests, by negative implication, that the Guyanese government does not consider Guyana to be a party to the Convention. The Guyanese Prime Minister's dated request for a presumption of treaty continuity—made almost fifty years ago—is significantly undermined by the Guyanese government's more recent actions in formally adhering to the other aviation treaties. In light of the U.S. gov-

ernment's clear position, and the Guyanese government's ambiguous one, it is more likely than not that Guyana is not a party to the Warsaw Convention.

Caribbean urges the court to follow the Eleventh Circuit's analysis in *Blake v. American Airlines*, 245 F.3d 1213, to find that Guyana is a party to the Warsaw Convention. In *Blake*, the Eleventh Circuit held that Jamaica remained a party to the Warsaw Convention after Jamaica gained independence from the United Kingdom, which had adopted the treaty on behalf of the British colony of Jamaica. *See id.* at 1217. However, defendant's reliance on *Blake* is inapposite. First, the Eleventh Circuit decision is not binding on this Court, even though this case was transferred from the District Court for the Southern District of Florida. *See In re Pan Am. Corp.*, 950 F.2d 839, 847 (2d Cir.1991) ("[A] transferee court should be free to decide a federal claim in the manner it views as correct without deferring to the interpretation of the transferor circuit." (internal quotation marks omitted)); *In re Air Crash at Belle Harbor, N.Y.*, No. 02 MDL 1448(RWS), 2003 WL 21032034, at *2 (S.D.N.Y. May 5, 2003) ("[W]hen deciding motions, MDL transferee courts are expected to apply the law of the circuit in which it sits, not that of the transferor court.").

Second, *Blake* is distinguishable on its facts. The case arose from an incident that occurred in 1995. *See Blake*, 245 F.3d at 1214. In determining the U.S. government's position on Jamaica's status with respect to the Convention, the Eleventh Circuit consulted a pre–2002 version of *Treaties in Force*, which still contained the language that "the status of certain states to which the [C]onvention was applicable prior to their becoming independent is not determined." *See id.* at 1216 (quoting *Treaties in Force* 342 (1999)). Based on this language, the court concluded that "[t]he United States Department of State has taken no position on whether Jamaica is a High Contracting Party to the Convention." *Id.* As discussed, however, that language has since been removed from *Treaties in Force*, indicating that the State Department no longer takes the position that the status of states like Guyana is undetermined. Rather, the text and history of *Treaties in Force* indicate that the State Department now considers Guyana not to be a party to the Convention.

Third, the Eleventh Circuit acknowledged "the negative implication created by Jamaica's failure to adopt the Warsaw Convention formally despite the fact that it has taken formal steps to succeed to 23 of the 26 multilateral treaties deposited at the United Nations which Great Britain negotiated on Jamaica's behalf," but explained that it found "more compelling the positive implications created by Jamaica's affirmative conduct in respect to the Convention." *Id.* at 1216–17. "Specifically, Jamaica ha[d] taken an active role in negotiations to amend the Warsaw Convention, as evidenced by its participation in the Guatemala Protocol (now known as the Montreal Protocols) to amend the Convention, and its certification of the Guadalajara Convention, the terms of which expressly supplement the Warsaw Convention." *Id.* at 1217. In contrast, Guyana has not undertaken any affirmative conduct with respect to the Convention that outweighs the negative implication created by its failure to adopt the treaty formally and by its contrasting official adoption of other aviation treaties. Guyana is not a party to any amendments or supplementary protocols to the Warsaw Convention; nor is there any evidence that it has taken an active role in the negotiation of any such amendments or protocols. Accordingly, the Jamaican government's conduct with respect to the

Convention differs materially from that of the Guyanese government. The court declines to follow *Blake.*

Defendant next contends that both the British and Canadian governments have recognized Guyana to be a party to the Convention. *See* Caribbean Mem. 8. This contention is also unavailing. The Second Circuit has indicated that it is the conduct of the governments at issue—here the United States and Guyanese governments—that is dispositive as to whether a treaty remains in force between countries. *See, e.g., N.Y. Chinese TV Programs,* 954 F.2d at 852–53 (examining the conduct of the United States and Taiwanese governments to determine whether a treaty remained in force between the United States and Taiwan). The court declines to ignore the unambiguous position of the U.S. government in favor of opposing positions taken by the British and Canadian governments.

Citing a Third Circuit case, Caribbean also maintains that "there is a presumption that when a colonized state earns its independence from a colonial nation, prior treaties recognized by the former colonial power will devolve to the successor in interest nation." Caribbean Reply Mem. 2 (quoting *Saroop,* 109 F.3d at 172). However, the Second Circuit has yet to adopt this presumption. And even if it had, the presumption would be outweighed here by the U.S. government's clear position that Guyana is not a party to the Warsaw Convention.

## IV. CONCLUSION

In light of the foregoing, the court concludes that Guyana is not a party to the Warsaw Convention and that the treaty therefore does not govern this case. The court thus denies defendant's motion to dismiss for lack of subject matter jurisdiction and grants plaintiffs leave to amend their complaint.

SO ORDERED.

## *OPINION AND ORDER*

In this multi-district litigation, numerous plaintiffs bring suit against defendant Caribbean Airlines Limited for personal injuries arising from the crash landing of Caribbean Airlines Flight BW 523 in the Republic of Guyana in 2011. Defendant brought a motion to dismiss in several of the cases, asserting that the Warsaw Convention governed those plaintiffs' claims and that the treaty's forum provision deprived the court of subject matter jurisdiction. *See* 12–MD–2395, Dkt. # 16. On May 16, 2014, this court issued an Opinion and Order holding that the Warsaw Convention does not govern these claims because Guyana is not a party to the Convention. *See* Opinion & Order, 12–MD–2395, Dkt. # 48. Accordingly, the court denied defendant's motion to dismiss and granted plaintiffs leave to amend their complaints.

The caption of the Opinion and Order stated that it applied to the plaintiffs' claims in 12–CV–4891 and 13–CV–230. Both plaintiffs in 12–CV–4891 have since settled their claims against defendant. *See* 12–CV–4891, Dkt. # 23. The three plaintiffs' claims in 13–CV–230 remain active. Defendant has requested that the Opinion and Order be amended to apply as well to the three similarly situated plaintiffs in 13–CV–4228 whose claims remain active. At a conference before Magistrate Judge Joan M. Azrack on September 24, 2013, counsel for the remaining three plaintiffs in 13–CV–4228 consented to inclusion in the then-pending motion to dismiss for lack of subject matter jurisdiction. *See* 12–MD–2395, Dkt. # 42. Those parties were inadvertently omitted from the caption in the May 16 Opinion and Order,

and the Opinion and Order is hereby amended to apply to them.

On June 27, 2014, defendant requested that the court certify an interlocutory appeal from the Opinion and Order's ruling that the Warsaw Convention does not govern plaintiffs' claims. *See* 12–MD–2395, Dkt. # 50. For the reasons set forth below, the request is denied.

## DISCUSSION

The court assumes familiarity with its prior Opinion and Order and only restates the essential facts here. Plaintiffs were traveling from Florida to Georgetown, Guyana on July 30, 2011. While landing in Georgetown, Flight BW 523 overshot the runway, and plaintiffs sustained personal injuries. After plaintiffs brought suit, defendant moved to dismiss, asserting that the court lacked subject matter jurisdiction because the Warsaw Convention governed the claims.

The Warsaw Convention provides the exclusive cause of action for personal injuries arising from "international transportation" and preempts any corresponding state law causes of action. Whether Flight BW 523 qualifies as "international transportation" within the meaning of the Warsaw Convention depends on whether "the place of departure" and "the place of destination" are both situated within the territories of nations that are parties to the Convention. The United States, the place of departure, is a party to the Convention. Therefore, the applicability of the Warsaw Convention turns on the issue of whether Guyana, the place of destination, is also a party. In its Opinion and Order, this court ruled that Guyana is not a party to the Convention and therefore denied defendant's motion to dismiss for lack of subject matter jurisdiction. Opinion & Order 151–52. Defendant now seeks interlocutory review of this order.

■ Under 28 U.S.C. § 1292(b), a district court may certify an order for interlocutory appeal if the court is "of the opinion that such order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation." The Court of Appeals "may thereupon, in its discretion, permit an appeal to be taken from such order." *Id.*[1]

■ The Second Circuit has "repeatedly cautioned [that] use of this certification procedure should be strictly limited." *In re Flor*, 79 F.3d 281, 284 (2d Cir.1996). "[O]nly 'exceptional circumstances [will] justify a departure from the basic policy of postponing appellate review until after the entry of a final judgment.'" *Klinghoffer v. S.N.C. Achille Lauro Ed Altri–Gestione Motonave Achille Lauro in Amministrazione Straordinaria*, 921 F.2d 21, 25 (2d Cir.1990) (quoting *Coopers & Lybrand v. Livesay*, 437 U.S. 463, 475, 98 S.Ct. 2454, 57 L.Ed.2d 351 (1978)). Accordingly, district courts must "exercise

---

1. Plaintiffs argue that defendant's request for an interlocutory appeal should be denied as untimely. *See* 12–MD–2395, Dkt. # 51. Neither § 1292(b) nor the Federal Rules of Civil Procedure specify a deadline for a party to seek an interlocutory appeal, but "courts have held that any delay in seeking amendment and certification must be reasonable." *Century Pac., Inc. v. Hilton Hotels Corp.*, 574 F.Supp.2d 369, 371 (S.D.N.Y.2008) (internal quotation marks omitted). In this case, the court's Opinion and Order was dated May 16, 2014, but was not docketed on the court's Electronic Case Filing system until May 21, 2014. Defendant filed its request for an interlocutory appeal on June 27, 2014, just over a month later. The court declines to find this delay unreasonable and will address defendant's request on the merits.

great care in making a § 1292(b) certification." *Westwood Pharm., Inc. v. Nat'l Fuel Gas Distrib. Corp.*, 964 F.2d 85, 89 (2d Cir.1992). The court must determine whether all three of the statutory requirements are satisfied: (1) the order concerns a controlling question of law; (2) there is substantial ground for difference of opinion; and (3) an immediate appeal may materially advance the ultimate termination of the litigation. The party moving for interlocutory appeal "bears the burden of demonstrating that all three of the substantive criteria are met." *Murray v. UBS Sec., LLC*, No. 12 Civ. 5914(KPF), 2014 WL 1316472, at *2 (S.D.N.Y. Apr. 1, 2014) (citing *Casey v. Long Island R.R. Co.*, 406 F.3d 142, 146 (2d Cir.2005)). Even where all three criteria are satisfied, "district courts have unfettered discretion to deny certification if other factors counsel against it." *Transp. Workers Union of Am., Local 100, AFL–CIO v. N.Y.C. Transit Auth.*, 358 F.Supp.2d 347, 351 (S.D.N.Y. 2005) (internal quotation marks omitted).

In this case, the first and third prongs are satisfied, because the court's ruling on whether Guyana is a party to the Warsaw Convention determined whether the court had subject matter jurisdiction over plaintiffs' claims. "[A] question of law is 'controlling' if reversal of the district court's order would terminate the action." *Klinghoffer*, 921 F.2d at 24. The question of law "need not affect a wide range of pending cases" as long as it is controlling in the instant litigation. *Id.* Here, an order reaching the opposite result from this court's Opinion and Order, holding that Guyana is a party to the Warsaw Convention and that the Convention governs plaintiffs' claims, would deprive the court of subject matter jurisdiction and dispose of plaintiffs' claims. Therefore, the issue is clearly controlling, and an immediate appeal could materially advance the litigation.

However, the stringent standards for the second prong are not satisfied in this case, because defendant has not demonstrated that there is substantial ground for a difference of opinion. Courts have suggested that the second prong may be satisfied where "the issues are difficult and of first impression," *id.*, 921 F.2d at 25, or where the party seeking interlocutory review can point to "a substantial split in Second Circuit district court rulings on this issue," *Salim Oleochemicals, Inc. v. M/V SHROPSHIRE*, 177 F.Supp.2d 159, 162 (S.D.N.Y.2001). However, the Second Circuit has cautioned that "the mere presence of a disputed issue that is a question of first impression, standing alone, is insufficient to demonstrate a substantial ground for difference of opinion." *In re Flor*, 79 F.3d at 284. Certification for interlocutory appeal "is not intended as a vehicle to provide early review of difficult rulings in hard cases." *German by German v. Fed. Home Loan Mortg. Corp.*, 896 F.Supp. 1385, 1398 (S.D.N.Y.1995). Rather, the district judge must "analyze the strength of the arguments in opposition to the challenged ruling" in order to determine "whether the issue for appeal is truly one on which there is a *substantial* ground for dispute." *In re Flor*, 79 F.3d at 284 (internal quotation marks omitted). In order for a court to find a substantial ground for dispute, "there must be substantial doubt that the district court's order was correct." *SPL Shipping Ltd. v. Gujarat Cheminex Ltd.*, No. 06–CV–15375 (KMK), 2007 WL 1119753, at *2 (S.D.N.Y. Apr. 12, 2007) (internal quotation marks omitted).

Here, as the court recognized in the Opinion and Order, the question of whether Guyana is a party to the Warsaw Convention is an issue of first impression. Opinion & Order 143. As the court ex-

plained, "[t]he uncertainty of Guyana's status arises from the ... historical context." *Id.* at 144. The United Kingdom signed the Warsaw Convention in 1929 and subsequently extended the Convention to its colonies, including British Guiana. *Id.* at 144. British Guiana gained independence in 1966, and the country became the Republic of Guyana in 1970. *Id.* at 144. Since there is no clear customary international law regarding treaty succession when a nation gains independence, the court considered the positions of both the United States and Guyanese governments to determine whether Guyana remained a party to the Warsaw Convention after assuming its independence from the United Kingdom. *Id.* at 145.

Regarding the position of the United States government, the court looked to the U.S. State Department's *Treaties in Force* publication. In 1969, three years after Guyana's independence, *Treaties in Force* included Guyana as a party to the Warsaw Convention. *Id.* at 146–47. By at least 1997, *Treaties in Force* omitted Guyana from the list of parties and included a footnote stating, "The status of certain states to which the convention was applicable prior to their becoming independent is not determined." *Id.* at 146–47. Beginning in 2002, *Treaties in Force* omitted that footnote while continuing to leave Guyana off the list of parties to the Warsaw Convention. *Id.* at 147. The court found that this series of revisions "lends substantial support to a conclusion" that the United States no longer considers Guyana's status undetermined and instead considers Guyana not to be a party to the Warsaw Convention. *Id.* In further support of this conclusion, *Treaties in Force* clearly states that the depositary is the "authoritative source" for the current list of parties to a multilateral treaty. *Id.* at 146. The court noted that Poland is the depositary for the Warsaw Convention, and "Guyana is nota-

bly missing from the list of parties to the treaty maintained by the Polish government." *Id.*

Meanwhile, the court found that the conduct of the Guyanese government "supports conflicting inferences as to that government's position on whether Guyana is a party to the Warsaw Convention." *Id.* at 148. Significantly, Guyana has never formally acceded to the Warsaw Convention while it has formally acceded to other aviation treaties, which "creates a strong inference that the Guyanese government does not consider Guyana to be a party to the Convention." *Id.* at 148–49. The court found that other evidence cited by defendant did not provide a clear indication that the Guyanese government considers Guyana to be a party to the Warsaw Convention. *Id.* at 149–51. Based on all of these considerations, the court concluded that "[i]n light of the U.S. government's clear position, and the Guyanese government's ambiguous one, it is more likely than not that Guyana is not a party to the Warsaw Convention." *Id.* at 151–52.

While this may be a disputed issue with reasonable arguments on both sides and no controlling Second Circuit precedent, defendant has not shown that there is a split of authorities on the issue. First, defendant argues that the Eleventh Circuit "reached a different conclusion on similar facts, albeit involving a different country," in *Blake v. American Airlines*, 245 F.3d 1213 (11th Cir.2001). However, the Opinion and Order made clear that *Blake* did not merely address the treaty status of a different country, but rather is distinguishable on its facts. Opinion & Order 151–53. In *Blake*, the Eleventh Circuit held that Jamaica remained a party to the Warsaw Convention after Jamaica gained independence from the United Kingdom. In reaching this result, the Eleventh Circuit relied on an earlier edition of *Treaties in*

*Force* that included the footnote stating that "the status of certain states to which the convention was applicable prior to their becoming independent is not determined." *Blake*, 245 F.3d at 1216. As already discussed, more recent editions of *Treaties in Force* have removed this footnote, giving rise to a different inference regarding the United States government's position. In addition, the Eleventh Circuit in *Blake* cited Jamaica's "affirmative conduct in respect to the Convention," including Jamaica's "active role in negotiations to amend the Warsaw Convention," *id.* at 1216–17, while Guyana has not undertaken any such affirmative conduct. Since *Blake* relied on a materially different edition of *Treaties in Force* and materially different evidence regarding the conduct of Jamaica's government, it does not conflict with the court's ruling in this case.

Defendant also argues that the court's ruling in this case conflicts with a Third Circuit presumption that "when a colonized state earns its independence from a colonial nation, prior treaties recognized by the former colonial power will devolve to the successor in interest nation." *Saroop v. Garcia*, 109 F.3d 165, 172 (3d Cir. 1997). But as the court found in its Opinion and Order, the Second Circuit has not adopted this presumption, and, in any event, any such presumption would be outweighed here by the substantial evidence that the United States does not consider Guyana to be a party to the Warsaw Convention. Opinion & Order 152–53.

■ Finally, defendant argues that both the British and Canadian governments consider Guyana to be a party to the Warsaw Convention. To be sure, as defendant argues, "[t]he opinions of our sister signatories ... are entitled to considerable weight" when construing a treaty. *El Al Israel Airlines, Ltd. v. Tseng*, 525 U.S. 155, 176, 119 S.Ct. 662, 142 L.Ed.2d 576 (1999) (internal quotation marks omitted). This case does not involve an issue of treaty interpretation, however, but rather an issue of determining whether a nation is a party to a treaty. The Second Circuit looks to the conduct of the governments at issue to determine whether a treaty remains in force between two countries. *See N.Y. Chinese TV Programs, Inc. v. U.E. Enters., Inc.*, 954 F.2d 847, 852–53 (2d Cir.1992) (examining the conduct of the United States and Taiwanese governments to determine whether a treaty remained in force between the United States and Taiwan). In this case, the positions of the United States and Guyanese governments are dispositive. As the court held in its Opinion and Order, the positions of the British and Canadian governments do not outweigh the position of the United States government that Guyana is not a party to the Convention. Opinion & Order 152–53.

In sum, all of the arguments that defendant raises have already been considered and rejected by this court in its Opinion and Order denying the motion to dismiss. Defendant has not raised any new arguments that are sufficient to demonstrate a substantial ground for dispute or to cast substantial doubt on whether this court's prior ruling was correct. *See City of N.Y. v. Milhelm Attea & Bros., Inc.*, No. 06–CV–03620 (CBA)(VMS), 2012 WL 4959502, at *4 (E.D.N.Y. Oct. 17, 2012) (denying certification for interlocutory appeal where the court had "already considered and rejected those arguments as unpersuasive"); *In re Methyl Tertiary Butyl Ether ("MTBE") Products Liab. Litig.*, 399 F.Supp.2d 320, 324 (S.D.N.Y.2005) ("A party that offers only arguments rejected on the initial motion does not meet the second requirement of § 1292(b).") (internal quotation marks and alteration omitted); *Ralph Oldsmobile Inc. v. G.M. Corp.*, No.

99 Civ. 4567(AGS), 2001 WL 55729, at \*4 (S.D.N.Y. Jan. 23, 2001) (party did not establish substantial ground for difference of opinion where it "offer[ed] only cases that the Court has already deemed distinguishable and unpersuasive").

Finally, defendant raises several reasons why, on policy grounds, this court should afford the Second Circuit an opportunity to address the issue raised here. Defendant argues that the multi-district nature of this litigation counsels in favor of certifying an interlocutory appeal to resolve the applicability of the Warsaw Convention now, while all of the cases are consolidated in this Circuit. Otherwise, the cases will be remanded to the transferor circuits for trial, which could lead to appeals of the same issue in both the Second and Eleventh Circuits and possibly inconsistent outcomes. But the court agrees with plaintiff that this possibility is inherent in the nature of multi-district litigation; there is always the chance that the transferor circuits will reach inconsistent appellate rulings after the cases are remanded, and that alone cannot justify certifying an issue for interlocutory appeal. Moreover, defendant has provided no reason to conclude that the Eleventh Circuit would reach a different outcome on this issue, since, for the reasons already discussed, *Blake* is distinguishable. Defendant also argues that the court's ruling undermines the Warsaw Convention's goal of creating uniform liability rules for air carriers and will encourage forum shopping. But this argument relates to how the Warsaw Convention should be interpreted, not to the question of whether a country is a party to the treaty.

■ Therefore, defendant has not met its burden of demonstrating that this case presents the "exceptional circumstances" that justify interlocutory review. Defendant has not satisfied the second statutory requirement, because none of the arguments that defendant raises establish a substantial ground for difference of opinion. Rather than pointing to any conflicting authority either within this circuit or between circuits, defendant raises the same arguments that this court has already found unpersuasive and relies on cases that are distinguishable. Defendant's motion to dismiss raised an important issue of first impression, but defendant has not provided any reason for the court to depart from the usual practice of awaiting the entry of a final judgment before affording the opportunity for appellate review.

## CONCLUSION

For the foregoing reasons, the court's May 16 Opinion and Order denying defendant's motion to dismiss for lack of subject matter jurisdiction is amended to apply to plaintiffs Abdool Latif, Maylene Persaud, and Ernest Scott in 13–CV–4228, and defendant's request for the court to certify an interlocutory appeal of the order is denied.

SO ORDERED.